Safford L. BEAUCHAMP, Respondent,

v.

NORTH DAKOTA WORKMEN'S COMPEN-
SATION BUREAU, Appellant.

No. 8083.

Supreme Court of North Dakota.

Feb. 13, 1964.

Mervin A. Tuntland, Garrison, for re-
spondent.

Helgi Johanneson, Atty. Gen., Myron E.
Bothun, Asst. Atty. Gen., Bismarck, for
appellant.

MORRIS, Chief Justice.

On June 1, 1961, the respondent, Safford
Beauchamp, filed a claim with the North
Dakota Workmen's Compensation Bureau

for compensation and medical expenses for an injury which he claimed to have sustained in the course of his employment as sandblaster. The injury was caused by the inhalation of sand while working for an insured employer in connection with the construction of the Garrison Dam for a period of about nine months in 1958 which resulted in the claimant contracting the occupational disease silicosis. The claimant's ailment was diagnosed as silicosis on May 9, 1961, and he entered a hospital the following day. On August 3, 1961, the Bureau denied the claim on the ground that it was filed more than one year after the date of injury. Section 65–05–01, NDCC, provides that:

"All original claims for compensation for disability or death shall be made within sixty days after injury or death. For any reasonable cause shown, however, the bureau may allow original claims for compensation for disability or death to be made at any time within one year after the injury or death."

The claimant appealed to the District Court of Burleigh County pursuant to the provisions of Section 65–10–01, NDCC. On a trial in the district court, the decision of the Bureau was reversed on the ground that the injury which resulted in the claimant's disability occurred on or about May 9, 1961, which is less than 60 days prior to the filing of the claim. The case was remanded to the Bureau for disposition in accordance with the findings and decision of the district court. The court's findings are in substance as follows:

### I.

That claimant worked in the tunnels under construction of the Garrison Dam as a sandblaster from January 2, 1958 to September 30, 1958, and that during that time he was exposed to a great deal of sand dust. That on September 14, 1958 claimant was hospitalized at the Garrison Memorial Hospital at Garrison, North Dakota,

and that while silicosis was suspected, X-rays were taken which showed a negative result as to silicosis.

### II.

Claimant did not have any other attacks and was never prevented from working thereafter until May 10, 1961, at which time he was again admitted to the Garrison Memorial Hospital, at Garrison, North Dakota.

### III.

That silicosis is a disease of such a nature that its progress continues after the exposure to the fine silica particles which cause the disease, and that in most instances it cannot be detected for months and even years after the exposure.

### IV.

That the disease of silicosis had not progressed to such an extent that it could be detected until on or about May 9, 1961.

### V.

That a few days following the admission to the hospital claimant's condition was diagnosed as silicosis. That the silicosis was caused by this exposure to the fine dust in the tunnels while working as a sandblaster from January 22, 1958 to September 30, 1958.

### VI.

That injury to the appellant occurred on or about May 9, 1961, which is less than 60 days prior to the time that the appellant made his claim to the Workmen's Compensation Bureau.

The Bureau appeals to this Court from a judgment of the district court entered pursuant to the decision.

The only finding that is challenged is that the injury occurred on or about May 9, 1961. The appellant contends that under

the facts in this case the injury must be held to have occurred not at any specific time or any specific date, but during the period of employment as a sandblaster which terminated on September 30, 1958, which would render the limitations provided by Section 65–05–01, NDCC applicable to respondent's claim and it would be barred.

Our Workmen's Compensation Fund was established and the Workmen's Compensation Bureau created by Chapter 162, Session Laws N.D.1919. The original Act did not cover occupational diseases. Chapter 222, Session Laws N.D.1925, added to the definition of "injury" by stating "The term 'injury' includes in addition to an injury by accident, any disease proximately caused by the employment." This provision was later enlarged and now reads:

"* * * Such term, in addition to an injury by accident, shall include:

"a. Any disease which can be fairly traceable to the employment. Compensation shall not be paid, however, for any condition which existed prior to the happening of a compensable injury nor for any disability chargeable to such condition. Ordinary diseases of life to which the general public outside of the employment is exposed shall not be compensable except where the disease follows as an incident to, and in its inception is caused by a hazard to which an employee is subjected to in the course of his employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. It need not have been foreseen or expected, but after it is contracted, it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence; * * *." Section 65–01–02, subd. 8, NDCC.

The 1919 Act contained the identical language regarding the filing of claims quoted from Section 65–05–01, NDCC.

Chapter 162, Session Laws N.D.1919, Section 15. It is the limitation upon which the appellant relies.

The appellant Bureau urges that this case is controlled by the decision of this Court in Bjorseth v. North Dakota Workmen's Compensation Bureau, 62 N.D. 623, 244 N.W. 515, decided in 1932.

In that case it appears that the claimant froze a big toe of his left foot on January 21, 1929, while in the course of his employment. At the time he experienced no pain, and there was no indication that he had been injured or suffered ill effects from the freezing until November 17, 1929, after cold weather had again set in. On that date he consulted a physician and learned that he was suffering from the effects of the freezing he received the previous January. He was unable to do any work for a long period after November 17, 1929, and on May 15, 1930 he presented a claim to the Workmen's Compensation Bureau which the Bureau dismissed because it was not filed within the statutory period of one year. This Court upheld the Bureau on the ground that the limitations upon the filing of a claim date from the original injury and not from a subsequent serious manifestation. In that case the Court treated the claim as one based upon a definite injury such as might be received in an accident. This case is vastly different. The claim is based upon a disability resulting from a disease the cause of which is clearly traceable to the claimant's employment as a sandblaster over a period of some eight months. The medical testimony shows that the development of the disease is slow and progressive over a period of time that may vary from a few months to several years. It does not stop when exposure ceases and will develop and continue to manifest itself even though the victim is withdrawn from exposure. In this case the claimant was hospitalized for about three days in September 1958. He was attended and examined by a physician who, after taking X-rays which showed a negative result, did not find the ailment to be

due to silicosis. It was not until about May 10, 1961 that the disease manifested itself to such an extent that the claimant was compelled to quit work and then for the first time the cause of his disability was diagnosed as silicosis resulting from his former employment as a sandblaster.

We are dealing here with a type of disability that was not covered by the original Workmen's Compensation Law in which the limitations to the filing of claims were provided. Amendments made compensable those disabilities that result from diseases fairly traceable to the employment. This was done by providing that the term "injury," in addition to an injury by accident, should include a disease fairly traceable to the employment. We do not read into this addition an intention to limit the right to file a claim for injury to a period of time beginning with the incipience of a disease that was progressive and did not for some period of time even after employment had ceased produce a disabling effect for which compensation might be awarded. Disability in this case cannot be traceable to an accident or to an incident, such as the freezing of a toe, that can be related to a definite or a proximate point of time. We do not find in Bjorseth v. North Dakota Workmen's Compensation Bureau, supra, compelling authority for the dismissal of the claim.

In Pearce v. N. D. Workmen's Compensation Bureau, 67 N.D. 512, 274 N. W. 587, we held that the failure to file a claim within 60 days may be excused, but failure to file within one year cannot. The crucial question, therefore, is when did the injury occur, for the injury starts the running of the period in either event. On the one hand it may be argued that the injury occurred, at the very latest, when the particles of sand ceased to be introduced into the claimant's lungs, which was the termination of his employment as sandblaster on September 14, 1958. However, the term "injury" as used in our statute has reference to a compensable injury. Our Work-

men's Compensation Act declares that the fund created thereby is for the benefit of employees injured in hazardous employment. Its coverage, as we have pointed out, was later extended to diseases fairly traceable to employment. Employment as a sandblaster is hazardous. The claimant's disability is definitely traceable to that employment. The fact of compensable disability resulting from the disease did not become apparent until May 9, 1961. The injury suffered by the claimant from the particles of sand continued progressively to the time of disablement, which was established when he was compelled to desist from labor and seek medical attention which resulted in the diagnosis of silicosis.

In Marsh v. Industrial Accident Commission, 217 Cal. 338, 18 P.2d 933, 86 A.L.R. 563, which involved a situation similar to the one in this case, the court said:

"An injury, then, may arise out of, and in the course of, the employment, when there is a causal connection between the employment and the injury; but for purposes of compensation the injury dates from the time when the diseased condition culminates in an incapacity for work. It is at that time that the employer's liability becomes fixed; for until then the workman had received no injury in the legal sense, though the seeds productive of the injury had lodged in his frame long before. Johnson v. London Guarantee & Acc. Co., 217 Mass. 388, 104 N.E. 735; Textileather Corp. v. Great American Ind. Co., 108 N.J.Law, 121, 156 A. 840. When a disease is latent and progressive, it may not culminate until a considerable time after the employment has terminated. So, if the disabling result is delayed, then the injury is correspondingly delayed, and the right to compensation does not accrue until the incapacity occurs."

Our reasoning is in accord with this quotation, and its applicability to claims for

compensation for disabilities resulting from diseases which can be fairly traceable to the employment is strengthened by the fact that such disabilities were made compensable by amendments to the original act subsequent to the limitations provided by Section 65–05–01, NDCC, which were originally applicable only to injury by accident. We agree with the trial court that the claim in this case was "made within sixty days after injury" and therefore within the period prescribed by Section 65–05–01, NDCC. The judgment appealed from is affirmed.

STRUTZ, ERICKSTAD, BURKE and TEIGEN, JJ., concur.