Virgil E. TEEGARDEN, Appellant,

v.

NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellee.

Civ. No. 10058.

Supreme Court of North Dakota.

Dec. 22, 1981.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for appellant; argued by Patricia Rudik Ellingson, Fargo.

Richard J. Gross, Asst. Atty. Gen., Bismarck, for appellee.

SAND, Justice.

This is an appeal from a district court judgment affirming a Workmen's Compensation Bureau order denying benefits to the claimant Teegarden on the grounds that the claim was not filed within one year after he knew or should have known that the injury he suffered was related to his employment.

Virgil E. Teegarden, the claimant and the appellant, started work in 1967 with the Hunter Grain Company in Hunter, North Dakota. Hunter Grain Company owns two elevators in Hunter, and Teegarden started work at a feed mill at one of the elevators. In February 1969, he began to have lung problems along with some pleurisy and pneumonia. He was treated as an outpatient for two weeks but was subsequently hospitalized for a period of time. In March of 1969 he had wheezes and rales of the left lower lung for which he was treated and which took approximately two weeks to clear. At this time he was advised by his doctor, Dr. R. W. McLean of Hillsboro, North Dakota, to avoid dust and to quit smoking. Teegarden transferred out of the feed mill to another job at the elevator where he continued to do general elevator work including delivering feed, loading trucks, and dumping grain. In May of 1969 he was again treated for tightness in his chest and bronchitis. The claimant was again treated for pneumonia and pneumonitis in December of 1970. In October 1973 he fractured three ribs and developed pneumonitis which required lengthy hospitalization. In April 1974, February 1975, and twice in September 1975, he was treated for bronchitis. He was again treated for bronchitis in May of 1976, February 1977, February 1978, January 1979, and June 1979. In October 1979 he was hospitalized with pneumonia. He was treated for bronchitis in November and December of 1979, and again in February and March 1980. In April of 1980 he was hospitalized with bronchitis. At that time Dr. McLean told Teegarden that he could no longer return to his employment at the elevator because of the sensitivity to dust. Dr. McLean informed Teegarden that he had a compensable claim with the Bureau.

On 29 May 1980 Teegarden filed a claim with the Bureau stating that his respiratory problems were due to constant exposure to grain dust during the course of his work at the elevator. The Bureau denied Teegarden's claim on 18 June 1980 because it found that the medical evidence indicated that Teegarden's exposure to grain dust through the years precipitated and aggravated his upper respiratory problems and, further, that his claim was not filed within one year after Teegarden first knew that his respiratory problems were related to exposure to grain dust.

Teegarden requested a rehearing and, in lieu of a rehearing, his deposition was taken on 18 Aug 1980. Following the taking of his deposition, the Bureau issued an order affirming the denial of Teegarden's claim.

Teegarden appealed to district court and the Bureau's decision was affirmed. A modification was made in the Bureau's conclusion of law to reflect that Teegarden's condition was related to his employment. Teegarden appealed to this Court.

This case, as well as *Beauchamp v. North Dakota Workmen's Compensation Bureau*, 126 N.W.2d 417 (N.D.1964),[1] demonstrate

---

1. In *Beauchamp v. North Dakota Workmen's Compensation Bureau, supra*, we held that for purposes of compensation the injury dates from the time when the diseased condition culminates in an incapacity for work. At the time of that decision § 65–05–01 provided as follows:

"All original claims for compensation for disability or death shall be made within sixty days after injury or death. For any reasonable cause shown, however, the bureau may

allow original claims for compensation for disability or death to be made at any time within one year after the injury or death."

In *Beauchamp* the claimant was employed as a sandblaster at the Garrison Dam from 2 Jan 1958 to 30 Sept 1958 and was exposed to a great deal of dust. He was hospitalized in September 1958. Silicosis was suspected but the x-ray showed negative results. He was again hospitalized on 10 May 1961 and a few days later his condition was diagnosed as sili-

situations in which disability cannot be traceable to a specific accident or to an incident such as the freezing of a toe that can be related to a definite or an approximate time. Rather, the development of the disease or injury is progressive over a period of time. We are also mindful that the statutory definition of an injury includes any disease which can be fairly traceable to employment. NDCC § 65–01–02(8). The term "fairly traceable to the employment" is defined in NDCC § 65–01–02(9). The Bureau does not dispute that the disease is fairly traceable to the employment.

The principal issue, if not the sole issue, is the date when the claimant knew or should have known that the injury (disease) was related to employment.

NDCC § 65–05–01 in part, and as is material to the facts of this case, provides: "When the actual date of injury cannot be determined with certainty the date of injury shall be the first date that a *reasonable person* knew or should have known that the injury was related to employment." [Emphasis added.]

■ The expression, "a reasonable person" is not defined by statute and accordingly it is to be understood in its ordinary sense. NDCC § 1–02–02. The word "reasonable" as defined in Webster's dictionary means "being in agreement with like thinking or right judgment, not conflicting with reason, not absurd, not ridiculous," etc. We believe the Legislature had in mind the ordinary reasonable lay person and not a person learned in medicine when it used that term in our statute. Nor do we believe that the Legislature in using the term "knew or should have known" intended to impose a standard or a degree of wisdom comparable to that expected of a doctor or a person learned in medicine. The Workmen's Compensation Act is primarily concerned with "the well-being of its wage earners." NDCC § 65–01–01. It is only logical to conclude that the term "reasonable person" refers to a wage worker. Con-

sequently the term "reasonable" varies and takes on full meaning from the setting of the employment and the degree of skill or type of skill and knowledge needed to satisfactorily perform the job.

This rationale is consistent with the following concept enunciated by Larson in his treatise on Workmen's Compensation Law:

"Plainly claimant should be expected to display no greater diagnostic skill than any other uninformed layman confronted with the early symptoms of a progressive condition. Indeed, it has been held that the reasonableness of a claimant's conduct should be judged in light of his own education and intelligence, not in the light of the standard of some hypothetical reasonable man of the kind familiar in tort law." Larson's Workmen's Compensation Law, Vol. 3, § 78.41, pages 15–91, 15–92.

This concept is reinforced by the Wisconsin Supreme Court in the case of *St. Mary's Hospital v. Industrial Commission*, 257 Wis. 411, 43 N.W.2d 465 (1950), involving substantially the same statutory language as found in NDCC § 65–05–01 (except the Wisconsin statute has a two-year limitation, whereas North Dakota has a one-year limitation) and a claimant who was a student nurse. The ultimate issue was, when did the claimant know or when should the claimant have known that she had tuberculosis and that it was work-related. The Industrial Commission found that the claimant did not know the nature of her disability· and its relation to her employment prior to October 1944 even though she became ill with a diagnosis of erythema nodosum and later an x-ray report indicated a suspicious lesion of possible tuberculosis, and another x-ray in May of 1944 in which a roentgenologist report dated 30 May 1944 concluded, "receding minimal tuberculosis infection." This was followed by a gastric test dated 22 June 1944 which indicated "positive laboratory test for tuberculosis."

cosis caused by exposure to dust. He filed a claim on 1 June 1961 and the Bureau denied it on the grounds that it was not filed within one

year after date of injury. The court reversed the Bureau's decision.

She was not informed of the source of her infection until October 1944 when she consulted with Dr. Marsh, and then she learned that her tuberculosis condition was related to her employment at the hospital and that her contact with a person there was the source of her tuberculosis. The court found that the record was sufficient to establish that she did not know the nature of her disability and its relation to her employment prior to October 1944; that she ought to have known the nature of her disability and its relation to her employment no earlier than October 1944; and the filing of her claim on 3 July 1946 was timely and her claim was not barred by operation of § 201.12 Stat. Wisconsin Statute.

The Wisconsin case involved a student nurse, whereas in the instant case the claimant had no knowledge or training in the field of medicine.

The Teegarden claim was denied by the Bureau and its pertinent finding of facts states: "That the claimant's claim was filed more than one year after he knew that his respiratory problem was related to exposure to grain dust."

█ The Bureau made no specific finding of fact as to when the claimant knew or should have known that his disability was fairly traceable to his employment, nor are we aware of any evidence that establishes this fact. The evidence establishes that the physician advised only that the claimant was to avoid dust and to quit smoking, but does not otherwise establish any basis that claimant should have known that the work *caused* the disease. The evidence may have been sufficient to convince the doctor that the work caused the injury, but the doctor did not articulate this to the claimant. We cannot expect the ordinary claimant to have knowledge in medical matters comparable to that of a doctor.

The letters of Dr. R. W. McLean clearly disclose that the Doctor had formed some very definite opinions or conclusions that Teegarden's injury (disease) was work-related and that smoking affected his health. However, the letters do not disclose if the doctor ever informed Teegarden that the injury (disease) was caused by his working conditions. Nor do the letters disclose if Teegarden was ever told to quit working at the elevator.

The Doctor also advised the claimant to quit smoking. Does this compel a conclusion that the injury (disease) was caused by smoking and that the claimant knew or should have known that smoking caused his injury (disease)? No one has suggested such a conclusion. The parallel between this and the dust is obvious.

Also, upon receipt of the claim by the Bureau an interoffice memo shortly thereafter contained the observation that pneumonia and bronchitis are diseases common to the general public and that aggravation should be considered if the claim was accepted. This clearly gives another indication that it was not obvious to the Bureau and therefore was not obvious for the claimant to know or that he should have known that his disease was work-related.

Our scope of review is pursuant to NDCC §§ 28–32–21 and 28–32–19. Under § 28–32–19(5) the decision of the Bureau shall be affirmed unless the findings of fact are not supported by a preponderance of the evidence. In *Steele v. North Dakota Workmen's Compensation Bureau*, 273 N.W.2d 692 (N.D.1979), we defined "preponderance of evidence" as "evidence more worthy of belief" or "the greater weight of evidence" or "testimony that brings the greater conviction of truth" or "is more convincing" or "has the probability of truth."

The record contains no evidence of facts indicating that the claimant was informed by anyone that the injury or disease was caused by or was work-related, nor is there any evidence that a worker comparable to the one in question here under the conditions of employment should have known that his injury or disease was caused by work or was work-related. As was observed by the Bureau, pneumonia and bronchitis are diseases that are common to the general public. Further, we also note that Teegarden had on two other occasions filed claims with the Bureau. On these occasions the injuries suffered (i.e. broken ribs and smashed thumb) were easily discernible as to the time of the injury. The claims were

filed with the assistance of Teegarden's doctor. This reflects a further indication of the extent of Teegarden's reliance upon a medically trained person to establish the possible compensability of an injury or disease.

In applying the preponderance-of-evidence test, we conclude that the Bureau's finding of fact that the "claimant's claim was filed more than one year after he knew that his respiratory problem was related to exposure to grain dust" is not supported by the preponderance of evidence.

The evidence, however, establishes that the claimant was advised by the doctor in April of 1980 of the relation between the working conditions and the disease, and advised the claimant not to return to work. The doctor at this time also advised the claimant that he had a compensable claim.

Accordingly, we reverse the Bureau's decision that the claim was not filed within one year after Teegarden knew that his respiratory problems were work-related and the claim is remanded to the Bureau for appropriate action in accordance with this opinion.

ERICKSTAD, C. J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.