James L. WHITE, Appellee,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellant.

Civ. No. 890006.

Supreme Court of North Dakota.

June 6, 1989.

Fintan L. Dooley (argued), Bismarck, for appellee.

Dean J. Haas (argued), Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellant.

MESCHKE, Justice.

The North Dakota Workers Compensation Bureau appealed from a district court judgment reversing a Bureau order which dismissed James L. White's claim as untimely. We affirm.

White was a custodian employed by the Turtle Lake Community Hospital. He slipped and fell down a flight of stairs at the hospital on April 27, 1984. White testified that he had a "temporary sharp pain" in his back, but that he returned to work. Although there were no hospital records or billings with the Turtle Lake Community Hospital, White received physical therapy and whirlpool treatment from Dr. Stanley Reiswig, an osteopath at the hospital. White told Reiswig about the fall and the "temporary sharp pain."

In July 1984, Dr. Reiswig x-rayed White's back and diagnosed a "lumbar strain," with "some minor osteophytic formation consistent with patients age with no major damage according to radiologist." Dr. Kralicek, a radiologist from Bismarck, also read that x-ray and concluded that White had "minor osteophyte formation ... consistent with [his] age." According to White, Dr. Reiswig told him that he had "arthritis consistent with [his] age."

White testified that he told the hospital administrator, Phyllis Bauer, about his back and mentioned Workers Compensation, but she responded that "[i]f we had to go to Workmen's Comp for every little thing that happened, nothing would get done around here." Bauer testified that an employee was not allowed to file a claim that was not authorized by a doctor.

In June 1985, White again saw Dr. Reiswig who noted "[l]ow back pain. Onset again approximately 1 month ago. Gradual onset, constantly present.... No recent ... injury," and who again diagnosed an "acute lumbosacral strain." Dr. Reiswig further noted that a second x-ray revealed "mild non spondyltic spondylolithesis of L3 and some intervertebral osteoarthritis" and repeated the "chronic lumbar strain" diagnosis. According to White, Dr. Reiswig again told him that he had arthritis.

Beginning in July 1985, White went to a chiropractor in Bismarck for treatment.

White testified that he told the chiropractor about the slip and fall and that the chiropractor told him that he had a "muscle problem." When White continued to experience back pain, he was referred to Dr. Roger Kennedy, a neurosurgeon in Bismarck, in November 1986. Dr. Kennedy diagnosed a herniated disc linked to White's fall at work on April 27, 1984, and performed surgery on November 21, 1986. Until White saw Dr. Kennedy, he had not missed any work because of his back and all of the previous bills were paid by him or by his insurance company.

In December 1986, White filed a claim for workers compensation benefits. After a formal hearing the Bureau found:

"Claimant testified at the hearing that he was aware that he had fallen at work, and was aware that he had injured himself. However, claimant further testifies that Dr. Reiswig had told him that he has arthritis. Claimant further testifies that he was unaware that he could then file a claim for workers compensation benefits because he had an arthritic condition.

\* \* \* \* \* \*

"Claimant knew or should have known that his fall at work was a compensable injury within the meaning of the North Dakota Workers Compensation Act. In fact, claimant did testify that he knew he had injured himself at work.

"That claimant misapprehended the seriousness of his injury is not a legal justification for failing to file within one year of injury.

\* \* \* \* \* \*

"The evidence indicates that claimant reasonably knew that he had injured himself at work on the day he fell, April 27, 1984."

The Bureau dismissed White's claim, concluding that he had not filed it within one year of the injury as required by NDCC 65–05–01.

White appealed to the district court, which concluded that the claim was timely filed:

"The important provision of the statute in this case is how the date of injury should be ascertained. Although it is clear in this case as to the date of the accident, the reasonable person's standard as contemplated in our state means much more. . . . [T]he test of when an injury occurred depends upon the knowledge that a reasonable lay person, not learned in medicine, knew or should have known that the injury was related to his or her employment. . . . I believe that [the Bureau's] Finding of Fact 7 indicates that the claimant knew or should have known that his fall at work was a compensible injury is outside the scope of the evidence. The evidence clearly established that Mr. White was advised that his injury was not job related by the treating physician. The reasonable person test would find that the average person would pursue this no further unless he had medical information. It does not require nontrained medical personnel to seek a second opinion in a small community. Ultimately, upon receiving the medical opinion that his injury was job related, he immediately filed a claim."

The district court reversed the Bureau's decision and remanded for a determination on the merits of whether White was entitled to compensation.

Pursuant to NDCC 28–32–19, our review requires us to affirm an administrative agency decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not sustained by the findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Murray v. North Dakota Workers Compensation Bureau*, 431 N.W. 2d 651 (N.D.1988). In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the Bureau. *Hayes v. North Dakota Workers Compensation Bureau*, 425 N.W.2d 356 (N.D.1988). Rather, we determine whether the Bureau could have reasonably reached

its factual determinations by the greater weight of all the evidence. *Moses v. North Dakota Workers Compensation Bureau,* 429 N.W.2d 436 (N.D.1988).

The Bureau argued that White did not file his claim within the time prescribed by NDCC 65–05–01:

> *"Claims for compensation—When and where filed.* All original claims for compensation shall be filed within one year after the injury or within two years after the death. The date of injury for purposes of this section shall be the actual date of injury when such can be determined with certainty by the claimant and bureau. When the actual date of injury cannot be determined with certainty the date of injury shall be the first date that a reasonable person knew or should have known that the injury was related to employment. . . ."

The Bureau contended that, as meant by this statute, the actual date of White's injury could be determined with certainty by White and the Bureau on April 27, 1984 when he slipped and fell down the stairs. According to the Bureau, the date of the slip and fall triggered the one year period for White to file his claim.

We do not construe NDCC 65–05–01 as narrowly as the Bureau. That statute must be construed liberally in favor of injured workers so that benefits may be extended to all who are fairly entitled to them. *Evjen v. North Dakota Workers Compensation Bureau,* 429 N.W.2d 418 (N.D.1988). The Bureau's argument would be more persuasive if the statute provided that the period for filing a claim began on the date of an accident. *See* 3 Larson, Workmen's Compensation Law, § 78.41(b) (1989). Instead, NDCC 65–05–01 requires knowledge of a compensable injury to begin the period for filing a claim. *Teegarden v. North Dakota Workmen's Compen-*

*sation Bureau,* 313 N.W.2d 716 (N.D. 1981). The Bureau has ignored that an apparently minor injury may develop into a compensable injury and that a doctor may not immediately diagnose an injury as work-related or compensable. 3 Larson, Workmen's Compensation Law, § 78 (1989). In those instances, the Bureau's interpretation would impel employees to " 'rush in with claims for every minor ache, pain, or symptom' in order to make sure that any future claim for compensation will not be deemed untimely." *Evjen, supra,* 429 N.W.2d at 421.

We do not believe that the Legislature intended to go that far. We believe that the Legislature intended that any doubt about whether a claimant can determine the actual date of a compensable injury with certainty must be resolved by testing the claimant's knowledge under the reasonable person standard.

We are not persuaded that *Bjorseth v. North Dakota Workmen's Compensation Bureau,* 62 N.D. 623, 244 N.W. 515 (1932), requires a different result. Bjorseth froze his big toe on January 21, 1929, while in the course of his employment. The injury did not manifest itself until November 21, 1929, when Bjorseth consulted a physician and was informed that his injury was work-related. On May 15, 1930, he filed a claim, which the Bureau dismissed because it was untimely. This court upheld the dismissal and construed the limiting statute [1] to require the filing of a claim within sixty days or, for reasonable cause, one year from the date of the injury, without any additional leeway for manifestation of injury. This court addressed the manifestation issue:

> "However, argument is advanced to the effect that, where a positive injury is received for which some slight compensation or award may be made, but yet where is present potentially a much graver injury from which disability may

1. The relevant statute then said:
"All original claims for compensation for disability or death shall be made within sixty days after injury or death. For any reasonable cause shown the bureau may allow origi-nal claims for compensation for disability or death to be made at any time within one year." Chapter 5, § 396a15, 1913–1925 Supplement to the 1913 Compiled Laws of North Dakota.

later result without any intervening cause, a liberal application of the remedial provisions of the law requires that the injury, for purposes of the limitation, should date from the subsequent serious manifestation. We should be strongly inclined to adopt this view if it were possible to spell out such a legislative intention. The statute itself presupposes that the serious consequences of an injury may not become so manifest within sixty days thereafter as to cause the claimant to file a claim. This would undoubtedly be a 'reasonable cause' for presenting the same at a later time. In the very provision authorizing the making of delayed claims, where a reasonable cause exists for the delay, the authority of the bureau to receive them is limited to one year from the injury or death. The Legislature must be deemed to have known that injuries will occasionally be received from which serious consequences may not result for a considerable period thereafter, and in the light of that knowledge it nevertheless placed a limit of one year from the date of the injury—not the resulting serious manifestation—for the presentation of a claim. And it saw fit to wholly deprive the bureau of the power to make compensation out of the fund unless the claim were so made." *Bjorseth v. North Dakota Workmen's Compensation Bureau, supra,* 62 N.D. at 629–630, 244 N.W. at 517.

The rationale of *Bjorseth* is not controlling because the statute has been amended to implement a reasonable-person standard for determining when a claimant knew or should have known that he had a compensable injury. *Evjen, supra.* The reasonable person standard of NDCC 65–05–01 controls our analysis.

In *Teegarden, supra,* and *Evjen, supra,* we defined the "reasonable person" standard to mean the ordinary lay person and not a person learned in medicine. In *Teegarden, supra,* we said that the reasonableness of a claimant's conduct should be judged in light of his own education and intelligence and not in light of the standard of some hypothetical reasonable person of the kind familiar to tort law.

In *Teegarden, supra,* this court ruled that a Bureau finding, that a claim was filed more than one year after Teegarden knew or should have known that his respiratory problem was related to exposure to grain dust at work, was not supported by a preponderance of the evidence. The record contained no evidence that Teegarden was informed by anyone that his respiratory problems were caused by or were work related. There was no evidence to establish that he should have known that his work at a grain elevator caused his respiratory problems. In contrast, in *Evjen, supra,* his doctor specifically informed Evjen that his headaches were related to his employment and were a significant health problem. In *Evjen* we ruled that the period for filing a claim for benefits began to run when the doctor gave him that information.

Here, we disagree with the Bureau's argument that White's claim was barred because he knew the origin of his back pain was the fall and because he sought medical attention for his back. In determining whether a claim is timely filed, the need-for-medical-attention test was replaced by the reasonable-person test in the 1977 amendment to NDCC 65–05–01, as explained in *Evjen, supra.* Medical attention alone is not controlling. Although White, an individual with an eighth grade education, knew he had pain in his back because of the fall on April 27, 1984, Dr. Reiswig specifically told him that he had arthritis. *Compare Teegarden, supra,* with *Evjen, supra.* White relied upon that diagnosis, and further testified that he believed arthritis was not compensable. Whether or not White knew or should have known that he had a compensable injury must be judged in view of "his own education and intelligence." *Teegarden, supra,* 313 N.W.2d at 718. We agree with the district court that the "reasonable person test would find that the average person

would pursue [a doctor's diagnosis] no further unless he had medical information [and would] not require nontrained medical personnel to seek a second opinion in a small community."

Under the circumstances of this case, we do not believe that a reasonable basis existed for the Bureau to conclude that, given his education and intelligence, White knew or should have known that he suffered a compensable injury on April 27, 1984. Rather, we believe that the evidence leads to one reasonable conclusion: the time for White to file a claim began in November 1986 when Dr. Kennedy informed him that he had a herniated disc and linked that injury to his fall. White's claim was filed within one year of that date and was therefore timely.[2]

The district court judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

---

2. We express no opinion about White's alternative argument that the Bureau and the employer were estopped to deny coverage because the employer misled him to believe that he could not file a workers compensation claim.