2001 ND 170

Jeryle KLEIN, Claimant and Appellant

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee

and

Lincoln–Oakes Nursery, Respondent.

No. 20010019.

Supreme Court of North Dakota.

Oct. 18, 2001.

Dean J. Haas, Dietz, Little & Haas, Bismarck, ND, for claimant and appellant.

Joseph F. Larson II (argued), Larson Law Firm, Jamestown, ND, for claimant and appellant.

Tracy Lynn Vigness Kolb (argued), Special Assistant Attorney General, Zuger Kirmis & Smith, Bismarck, ND, for appellee.

MARING, Justice.

[¶ 1] Jeryle Klein appeals from the district court's judgment affirming a North Dakota Workers Compensation Bureau decision dismissing his claim for benefits because it was not filed timely. We reverse the Bureau's decision and remand for appropriate action in accordance with this opinion.

I

[¶ 2] Klein began working as a nursery technician for Lincoln–Oakes Nursery in 1991. Sometime between 1993 and 1994, Klein began experiencing soreness in his knees. His symptoms gradually increased, and on October 14, 1996, Dr. David Larsen examined Klein and diagnosed him with severe degenerative arthritis in his left knee. Klein's medical history revealed that he had previously undergone surgery on his left knee in 1970. After Dr. Larsen examined Klein, he indicated in his notes that Klein would need a total knee replacement within five years. Two months later, on December 12, 1996, Klein had arthroscopic surgery on his left knee. Dr. Larsen indicated in his records: "[Klein] needs a change of lifestyle [sic]. He needs to change his work and change his attitude about his knee. He cannot [sic] continue to abuse it, do heavy work and heavy lifting any longer." Klein testified he remembered Dr. Larsen informing him to avoid heavy lifting and to change his line of work. Dr. Larsen did not specifically advise him that his condition was work related. Eventually, on February 5, 1997, Klein had arthroscopic surgery on his right knee, and Dr. Larsen reported in his records that his condition was advanced degenerative arthritis. Again, Dr. Larsen did not specifically advise Klein that his condition was work related.

[¶ 3] After his arthroscopic surgery in February 1997, Klein did not seek medical treatment for his knees again until March 1998 at which time Dr. Joseph Carlson informed him he would need bilateral knee replacement surgery. On December 17, 1998, Klein underwent the knee replacement surgery on both knees. During his recovery period, Lincoln–Oakes Nursery provided him with paid leave. Klein returned to work in February 1999, and his employer informed him on March 8, 1999, that he would only be paid for the hours he worked. Klein responded that he should have submitted a claim through the Workers Compensation Bureau since it would have continued to pay for his lost time.

[¶ 4] Klein filed a claim for Workers Compensation benefits on May 10, 1999, stating in his application that he experienced injuries to his left and right knees while working as a nursery technician. Klein did not specify the date of the injuries, but rather he indicated his injuries gradually developed in "1996–1998–99." He further stated he sustained injury to his knees as a result of job responsibilities which required "long periods of time performing duties on concrete, bending, lifting, kneeling, climbing, etc. and working in extreme weather conditions." Lincoln–

Oakes Nursery protested the claim on May 13, 1999, stating, "We were told for a number of years by [Klein] that the cause of his knee problems was arthritis...."

[¶ 5]   On June 17, 1999, the Bureau dismissed Klein's claim, concluding his injury was not work related and his claim was not filed timely under N.D.C.C. § 65–05–01. After a formal hearing, an administrative law judge ("ALJ") concluded Klein's injury was compensable, but the claim was filed untimely because Klein should have known in 1996 or 1997 that his injuries were work related.   The Bureau adopted the ALJ's decision on May 15, 2000, and Klein filed a petition for reconsideration and rehearing. On July 25, 2000, the Bureau denied Klein's petition.   The district court affirmed the Bureau's decision, and Klein filed a Notice of Appeal on January 12, 2001.

## II

[¶ 6]   On appeal, we review the Bureau's decision and not the decision of the district court.   N.D.C.C. §§ 28–32–19, 28–32–21.   We affirm the Bureau's decision as long as its findings of fact are supported by a preponderance of evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, its decision is in accordance with the law, or its decision does not violate the claimant's constitutional rights or deprive the claimant of a fair hearing.   N.D.C.C. §§ 28–32–19, 28–32–21; *see also Robertson v. North Dakota Workers Comp. Bureau*, 2000 ND 167, ¶ 8, 616 N.W.2d 844.   Our review of the Bureau's findings of fact is limited to determining whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence. *Robertson*, 2000 ND 167, ¶ 8, 616 N.W.2d 844.   Questions of law, including an interpretation of a statute, are fully reviewable on appeal from a Bureau decision.   *Id.*

## III

[¶ 7]   Klein argues the Bureau erroneously determined his claim was filed untimely because he did not know the arthritis in his knees was work related until April 1999, when Dr. Carlson informed him of the fact.

[¶ 8]   From 1977 to 1993 the period for filing a workers compensation claim was one year from the first date a reasonable person knew or should have known the employee suffered a work-related injury. N.D.C.C. § 65–05–01 (1977).   This standard, first enunciated in the 1977 amendment to § 65–05–01, triggers the commencement of the limitations period at the moment the claimant first has knowledge of the work-related injury.   1977 N.D. Sess. Laws ch. 579, § 8. Since the 1977 amendment, the statute has been the subject of several modifications, and we have traditionally construed it in favor of the insured workers so that benefits may be extended to all who are fairly entitled to them.   *White v. North Dakota Workers Comp. Bureau*, 441 N.W.2d 908, 910 (N.D. 1989).   In order to better understand the present statute, we will summarize the statutory and case law history.

[¶ 9]   Section 65–05–01, N.D.C.C., was amended in 1977 to provide: "When the actual date of injury cannot be determined with certainty the date of injury shall be the first date that a reasonable person knew or should have known that the injury was related to employment."   1977 N.D. Sess. Laws ch. 579, § 8. This amendment effectively replaced former standards, including the need-for-medical-attention standard and the incapacity-for-work standard, with the reasonable person standard. *Evjen v. North Dakota Workers Comp. Bureau*, 429 N.W.2d 418, 420 (N.D.1988).

Although the statute was later amended in 1979 and 1989, the version regarding the standard for determining whether a claim is filed timely remained unchanged. *See* 1979 N.D. Sess. Laws ch. 652, § 1; 1989 N.D. Sess. Laws ch. 766, § 2.

[¶ 10] A review of the cases interpreting the 1977 amendment to section 65–05–01 is helpful to our analysis of the return to the reasonable person standard in 1997. By adopting the reasonable person standard, the Legislature had in mind the ordinary reasonable lay person and not a person learned in medicine. *Teegarden v. North Dakota Workmen's Comp. Bureau*, 313 N.W.2d 716, 718 (N.D.1981). Therefore, the time period to file a claim for an injury, whose date of occurrence was not certain, began on the first day a reasonable person, not learned in medicine, knew or should have known that the injury was related to his employment. *Id.* Even though evidence may be sufficient to convince a claimant's doctor that work caused the injury, when a doctor does not articulate this causal relationship to the claimant, the ordinary person cannot expect to have such knowledge. *Id.* at 719. Because the claimant, in *Teegarden*, was not informed by his physician or anyone else that his respiratory disease was either caused by or related to his work, and because there was no evidence a worker comparable to the one in question should have known that his respiratory disease was caused by work or was work related, we concluded the Bureau had no reasonable basis to find the claimant filed an untimely claim. *Id.*

[¶ 11] In *Evjen*, we concluded the evidence supported a Bureau finding that the claimant knew or should have known his headaches were related to his work. 429 N.W.2d at 420. The claimant was told by his physician his headaches were causally related to his employment, and his physi-cian recommended he stop working the afternoon shift because of these headaches. *Id.* We stated:

> Unlike the claimant in *Teegarden*, Evjen received specific medical advice that his injury was related to his employment and also that it was a significant health problem. Without that advice, this would be a different case because headaches are fairly common afflictions often suffered by many from job stress. A reasonable lay person would not immediately file a claim for compensation upon learning that occasional headaches were work-related.

*Id.*

[¶ 12] Our *Teegarden* and *Evjen* decisions concluded "the Legislature had in mind the ordinary reasonable lay person and not a person learned in medicine." *Evjen*, 429 N.W.2d at 419 (quoting *Teegarden*, 313 N.W.2d at 718). We further concluded: "[t]he Workmen's Compensation Act is primarily concerned with 'the well-being of its wage earners.'" *Teegarden*, 313 N.W.2d at 718 (quoting N.D.C.C. § 65–01–01). It is only logical to conclude that the term "reasonable person" refers to a wage worker. Consequently the term "'reasonable' varies and takes on full meaning from the setting of the employment and the degree of skill or type of skill and knowledge needed to satisfactorily perform the job." *Teegarden*, 313 N.W.2d at 718. Also included within the reasonable person standard is the claimant's intelligence and education. *See White*, 441 N.W.2d at 911. In *White*, we said "the reasonableness of a claimant's conduct should be judged in light of his own education and intelligence and not in light of the standard of some hypothetical reasonable person of the kind familiar to tort law." *Id.* The claimant, in *White*, knew he had pain in his back, and his doctor informed him it was arthritis. *Id.*

He relied on that diagnosis and believed arthritis was not compensable. *Id.* We held, therefore, a reasonable basis did not exist for the Bureau to conclude that, given his eighth grade education and intelligence, the claimant knew or should have known that he suffered a compensable injury. *Id.* at 912.

[¶ 13] In *Stepanek v. North Dakota Workers Comp. Bureau*, 476 N.W.2d 1, 5 (N.D.1991), we concluded mere knowledge of a work-related injury does not support a claim. Rather, the inquiry is whether the claimant knew or should have known that he or she had a *compensable* work-related injury. *Id.* In *Stepanek*, we stated the term "injury" as used in N.D.C.C. § 65–05–01 must be read with reference to a "compensable" injury and explained the rationale:

> The Bureau has ignored that an apparently minor injury may develop into a compensable injury and that a doctor may not immediately diagnose an injury as work-related or compensable.... In those instances, the Bureau's interpretation would impel employees to "rush in with claims for every minor ache, pain, or symptom in order to make sure that any future claim for compensation will not be deemed untimely."

*Id.* (citations omitted).

[¶ 14] The Legislature amended the reasonable person standard in 1993 to provide:

> the date of injury is the first date that a reasonable person knew or should have known that the employee suffered a compensable injury and the employee was informed by the employee's treating health care provider that the employee's work activities are a substantial contributing factor in the development of the employee's injury or condition.

1993 N.D. Sess. Laws ch. 620, § 3. This amendment adopted the term "compensa-ble injury" and added the requirement that a claimant be informed by a health care provider that the injury was work related before triggering the limitations period. The purpose of this amendment was to better clarify the time in which the employee must file a claim when the date of the injury was not ascertainable. *Hearing on S.B.2040 Before the Senate Industry, Business, and Labor Comm.*, 53rd N.D. Legis. Sess. (March 16, 1993) (testimony of Janell Knutson).

[¶ 15] Our Court, however, did not have an opportunity to interpret the 1993 amendment. Our next decision regarding N.D.C.C. § 65–05–01 fell under the 1989 statute because the claimant's claim arose prior to 1993. *Anderson v. North Dakota Workers Comp. Bureau*, 553 N.W.2d 496, 498 (N.D.1996). In *Anderson*, the claimant was diagnosed with carpal tunnel syndrome in 1984. *Id.* at 497. Her condition worsened in 1994, necessitating surgery. *Id.* at 498. Soon thereafter, she filed a claim for benefits, but the Bureau dismissed the claim because it concluded Anderson was aware of her condition as early as 1984. *Id.* We stated:

> The fact Anderson sought medical attention in 1984 does not establish she then knew or should have known she had a compensable work injury.... The records prepared by Dr. Hennenfent and Dr. Swanson do not report they advised Anderson about the significance of her condition. Anderson testified she never even saw the records. A claimant is not charged with knowledge of opinions and conclusions in medical records she has not reviewed.

*Id.* at 499 (citations omitted). Anderson testified that although she felt symptoms at work, she did not know the cause of her injury, and we explained a person who experiences pain and other symptoms while working does not have reason to

know of a significant work-related injury. *Id.* at 500. Without any medical advice, we concluded the seriousness of Anderson's condition was not apparent in 1984, and therefore, she did not reasonably know she had a compensable work injury. *Id.*

[¶ 16] The Legislature again amended the statute in 1997 to provide, as it does now:

> All original claims for benefits must be filed by the injured employee, or someone on the injured employee's behalf, within one year after the injury or within two years after the death. *The date of injury for purposes of this section is the first date that a reasonable person knew or should have known that the employee suffered a work-related injury and has either lost wages because of a resulting disability or received medical treatment.* Notwithstanding a statute of limitations assertion, the claimant bears the burden of proving any entitlement to benefits.

1997 N.D. Sess. Laws ch. 539, § 1 (emphasis added). This amendment eliminated the requirement that the employee be informed by his health care provider he had a compensable injury and effectively returned to the reasonable person standard used in the majority of jurisdictions. *Hearing on H.B. 1266 Before the House Industry, Business and Labor Comm.,* 55th N.D. Legis. Sess. (March 12, 1997) (testimony of David L. Thiele). By amending section 65–05–01, N.D.C.C., to reflect the policy of the pre–1993 statute, we conclude the Legislature revived our prior case law regarding the reasonable person standard. *See, e.g., Anderson,* 553 N.W.2d at 499; *Stepanek,* 476 N.W.2d at 5–6; *Evjen,* 429 N.W.2d at 419–20; *Teegarden,* 313 N.W.2d at 718. Thus, in determining whether a claim is filed timely, the only significant difference between the 1997 amendment and the pre–1993 statute is the addition of the language "and has either lost wages because of a resulting disability or received medical treatment." N.D.C.C. § 65–05–01. This language is very similar to the 1967 amendment to section 65–05–01, N.D.C.C.:

> When the actual date of injury cannot be determined with certainty the date of injury shall be the first date the injury or diseased condition culminates in a need for medical attention or an incapacity of the employee for work.

1967 N.D. Sess. Laws ch. 484, § 1. In *Evjen,* we stated "[t]he effect of the 1967 amendment was to incorporate *Beauchamp's* incapacity-for-work trigger and add to it an alternative need-for-medical-attention standard." 429 N.W.2d at 420. This part of the standard, however, is not at issue in this case because Klein both lost wages as a result of his injuries and received medical treatment.[1] Neither medical attention nor lost wages alone is controlling, however. The critical question here is whether a reasonable lay person, not learned in medicine, knew or should have known that he suffered a work-related injury.

---

1. The record does not reveal who paid for Klein's lost wages and medical expenses for his arthroscopic surgeries in 1996 and 1997. It does reveal, however, that his employer was paying lost wages for a period of time after his bilateral knee replacements and that it was his employer's refusal to continue to pay full-time lost wages that prompted Klein to remark he should have filed a worker's compensation claim. "When payment of income benefits have been made by a private employer-employee benefit association or insurance plans, this has usually, but by no means invariably, been held to toll the statute." 7 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 126.07[3] (2001). Klein did not raise the issue of the application of the doctrine of equitable tolling of a statute of limitations and we, therefore, do not address it.

## IV

[¶ 17] Although the 1997 amendment does not require knowledge of a "compensable" injury, we have stated the term work-related injury as used in our previous statute must be read with reference to a compensable injury. *Stepanek*, 476 N.W.2d at 5. To read the statute otherwise would require employees to rush in with claims for minor injuries to ensure that a future claim for compensation will not be untimely. *Id.* This would cause an absurd result, and our Court construes statutes to avoid such results. *Berg v. Berg*, 2000 ND 36, ¶ 24, 606 N.W.2d 895. We conclude, therefore, the term "injury" as used in the 1997 amendment means a compensable injury.

[¶ 18] Although certain activities may cause symptoms, such activities do not necessarily cause the condition. The term compensable injury does not include those instances where "the employment acted as a trigger to produce symptoms in a latent and underlying condition if the underlying condition would likely have progressed similarly in the absence of the employment trigger, unless the employment trigger is determined to be a substantial aggravating or accelerating factor." N.D.C.C. § 65–01–02(9)(b)(6) (1995).

[¶ 19] The Legislature has removed the requirement that the employee be informed by his treating health care provider that his work is a substantial contributing cause of his condition, and we do not mean to suggest that a doctor must specifically inform the claimant that his work activities caused the claimant's injury in every case. 1997 N.D. Sess. Laws ch. 539, § 1. Certainly, some injuries are obviously caused by the claimant's work and do not require a doctor to inform the claimant his injuries are work related. In these situations, the limitations period begins to run in the absence of any medical advice. Other complex, insidious injuries, however, require knowledge in medical matters because their causes and effects are not immediately apparent to the reasonable lay person, not learned in medicine. These causes and effects can be complex and controversial even for physicians. A specific diagnosis of a claimant's condition, therefore, may not be sufficient to commence the limitations period when the diagnosis does not indicate that the condition is work related and when the condition is a common affliction suffered by many individuals.

[¶ 20] We conclude the correct legal standard in the instant case is whether a reasonable person, not learned in medicine, of claimant's age and intelligence with a GED and a manual labor work life history, knew or should have known in 1996 or 1997, his arthritis was a compensable work-related injury. The ALJ concluded:

> Given the objective medical evidence of the advanced state of Klein's degenerative arthritis by October 14, 1996, the extreme pain that caused him to seek medical treatment for his knee at the time, and the extensive discussions Dr. Larsen had with Klein from October 14, 1996, through February 19, 1997, concerning Klein's condition and the need for Klein to find different work, a reasonable person in Klein's position either knew or should have known by February 1997 that his work was related to his knee condition and to his need for medical treatment.

Assuming the ALJ considered Klein's age, intelligence or level of education, there is no acknowledgment of arthritis as an insidious disease or that a worker comparable to Klein should have known his arthritis was caused by his work. Because we cannot determine whether the correct legal standard was applied by the administrative law judge, we reverse the Bureau's deci-

sion that the claim was not timely filed, and we remand to the Bureau for appropriate action consistent with this opinion.

[¶ 21]   VANDE WALLE, C.J.,and NEUMANN, J., concur.

[¶ 22] The Honorable EVERETT NELS OLSON, District Judge, sitting in place of SANDSTROM, J., disqualified.

KAPSNER, Justice, dissenting.

[¶ 23]   I respectfully dissent.

[¶ 24]   Despite the disclaimers in ¶¶ 16 and 19, I cannot read the majority opinion other than to suggest that where an "insidious disease" is involved, a doctor must have specifically related to a claimant that work caused or substantially aggravated or accelerated the claimant's condition.  Further, the majority interpolates "compensable" into the statutory reference to a "work-related injury," thereby requiring that someone with more expertise than the average claimant make a specific cause/effect connection between the work and the injury and communicate the connection to the claimant.  Adding such requirements is not compatible with a reasonable person standard which the majority acknowledges is the legislative intent.

[¶ 25]   Relation to the claimant by the health care provider that the claimant had a compensable injury was specifically envisioned by the 1993 amendments to N.D.C.C. § 65–05–01.  *See* majority opinion at ¶ 14.  But it is a strange process of statutory interpretation to carry forward those two concepts in light of the 1997 amendments.  The majority acknowledges in ¶ 16 that the 1997 "amendment eliminated the requirement that the employee be informed by his health care provider he had a compensable injury and effectively returned to the reasonable person standard used in the majority of jurisdictions."

[¶ 26]   By returning to the reasonable person standard, the legislature made the question of whether the claimant knew or should have known he had a work-related injury a question of fact.  Into the mix of what a reasonable person knew or should have known will go many factors depending upon the circumstances of each case.  Our prior cases have recognized that the reasonable person standard has to incorporate the characteristics of the claimant that deal with his or her ability to understand the situation.  *White v. N.D. Workers Comp. Bureau,* 441 N.W.2d 908, 911 (N.D.1989).  With that limitation in mind, the question becomes whether a reasoning mind, acting as fact-finder, could have found Klein reasonably would or should have understood that he had a work-related injury.

[¶ 27]   The administrative law judge made the following findings based upon the evidence:

4.  Klein's job at Lincoln Oakes involved considerable bending, stooping, kneeling, climbing, and heavy lifting. The percentage or frequency of time spent at each of these activities on a daily basis was not established with any degree of certainty.  Testimony of Toni Berreth;  testimony of Jeryle Klein;  testimony of Greg Morgenson.

. . . .

7.  Klein first sought treatment from Dr. Larsen on October 14, 1996, when he experienced extreme pain over the medial joint line of his left knee.  Dr. Larsen diagnosed Klein with severe degenerative arthritis in the left knee, based on x-rays taken at the time and Klein's reported history of many years of knee problems, and he discussed Klein's condition with him, including the need for a total knee replacement within five years.  Dep. Ex. 11 at 5;  testimony of Jeryle Klein.

8. Klein was aware by October 14, 1996, that he had severe degenerative arthritis in his knees and was aware that the condition had started at least several years earlier. Testimony of Jeryle Klein.

9. Dr. Larsen performed arthroscopic surgery on Klein's left knee on December 12, 1996, and reported "bone-on-bone advanced degenerative arthritis ... really severe." Dep. Ex. 12 at 1.

10. Dr. Larsen once again discussed Klein's severe arthritis with him on December 20, 1996, and although he did not explicitly tell Klein his work was contributing to his arthritic condition, he advised Klein he should change his work because he could no longer do heavy work and heavy lifting. Dep. Ex. 11 at 6; testimony of Jeryle Klein.

11. On January 10, 1997, x-rays showed "moderately severe degenerative arthritis" in Klein's right knee, even "bone on bone in some areas." Dep. Ex. 11 at 6.

12. Dr. Larsen performed arthroscopic surgery on Klein's right knee on February 5, 1997, and reported "advanced degenerative arthritis with bone on bone." Dep. Ex. 12 at 6.

13. On February 19, 1997, Dr. Larsen showed Klein the videoarthroscopic pictures illustrating the extent of the severe degenerative arthritis in the right knee and once again advised Klein he would soon need total knee replacements, as well as strongly recommending that Klein should find a different line of work that did not require heavy lifting or kneeling. Dep. Ex. 11 at 9.

[¶ 28] Based on those findings, the administrative law judge concluded:

7. The greater weight of the medical evidence indicates Klein's work at Lincoln Oakes did substantially accelerate the progression of Klein's preexisting arthritis and did substantially worsen the severity of the condition. . . .

8. ... Given the objective medical evidence of the advanced state of Klein's degenerative arthritis by October 14, 1996, the extreme pain that caused him to seek medical treatment for his knee at that time, and the extensive discussions Dr. Larsen had with Klein from October 14, 1996, through February 19, 1997, concerning Klein's condition and the need for Klein to find different work, a reasonable person in Klein's position either knew or should have known by February 1997 that his work was related to his knee condition and to his need for medical treatment.

[¶ 29] The Bureau adopted the administrative law judge's findings and conclusions.

[¶ 30] Given Klein's explicit discussions with his doctors regarding his condition and the treatment for his condition, a reasoning mind could have determined that he understood the nature and seriousness of his condition. From the findings it cannot be determined that he was specifically advised by his doctors that his knee condition was "caused" by his work. However, he was specifically advised that he should not do work that involved heavy lifting and he clearly knew that heavy lifting was part of his working conditions at the Lincoln–Oakes Nursery. If more than that is required, then the "more" must be a specific statement by the physician that work is causing or aggravating or accelerating the condition. But this is precisely the condition that was eliminated by the 1997 amendments to N.D.C.C. § 65–05–01.

[¶ 31] The issue for this Court should be whether a reasoning mind reviewing the evidence could have found that a reasonable person of Klein's intelligence and education should have known in February

1997 that he suffered a work-related injury. Because I believe the evidence supports the findings made, I would affirm based upon the failure to file the claim within one year.

[¶ 32] Paragraph 17 of the majority opinion justifies its interpolation of the word "compensable" into N.D.C.C. § 65–05–01, despite the fact that the legislature has dropped it, as follows: "To read the statute otherwise would require employees to rush in with claims for minor injuries to ensure that a future claim for compensation will not be untimely." This ignores the plain language of N.D.C.C. § 65–05–01, and *Stepanek v. N.D. Workers Compensation Bureau*, 476 N.W.2d 1 (N.D. 1991), offered by the majority, provides little support for this assertion. At the time applicable to *Stepanek*, N.D.C.C. § 65–05–01 required filing within one year of the date of injury. The statute provided:

The date of injury for purposes of this section shall be the actual date of injury when such can be determined with certainty by the claimant and bureau. When the actual date of injury cannot be determined with certainty the date of injury shall be the first date that a reasonable person knew or should have known that the injury was related to employment.

*Stepanek*, 476 N.W.2d at 4.

[¶ 33] Although Stepanek could identify an injury event in 1986, she did not file her claim until 1989. *Id.* at 2. The Bureau argued that because Stepanek knew her actual date of injury, her filing was untimely. *Id.* at 3. This Court held the claim was timely filed because Stepanek could not have reasonably known that the injury was compensable as she had not missed work after the event and had not sought medical attention until 1988. *Id.* at 6.

[¶ 34] By contrast, N.D.C.C. § 65–05–01, as amended in 1997 and applicable to Klein, no longer refers to the "actual date of injury." And, in addition to the knowledge of a reasonable person that the worker has a work-related injury, the section requires that the worker "has either lost wages because of a resulting disability or received medical treatment." The combination of these standards to start the period of limitations means there is little incentive to rush in with claims for minor injuries.

[¶ 35] Reading back into the statute provisions which the legislature has removed subverts the purposes of a period of limitations—to assure timely filing of claims and timely receipt of benefits. Under these facts, I cannot hold that a reasonable person in the position of Klein would not have understood that he had a work-related injury that was severe in nature and had resulted in both lost wages and significant medical treatment. The Bureau made the appropriate findings, and I would affirm.

[¶ 36] EVERETT NELS OLSON, District Judge, concur.