Nancy Njaa SANDE, R.N., Appellee,

v.

STATE of North Dakota and the Board of Nursing of the State of North Dakota, Appellants.

Civ. No. 880294.

Supreme Court of North Dakota.

April 19, 1989.

Wefald Law Office, Ltd., Bismarck, for appellee; argued by Robert O. Wefald.

Zuger, Kirmis, Bolinske & Smith, Bismarck, for appellants; argued by James S. Hill, Sp. Asst. Atty. Gen.

MESCHKE, Justice.

The Board of Nursing ruled that Nancy Njaa Sande violated the Nurse Practices Act, Chapter 43–12.1, N.D.C.C., by practicing without a license. The Board fined her and directed a public reprimand. The district court reversed the decision of the Board. We affirm the district court's judgment.

Sande became a registered nurse in 1969. She renewed her license to practice nursing each year prior to 1987. During 1987, except for the month of May, Sande worked as a registered nurse. On the evening of November 12, 1987, following a conversation with co-workers earlier that day, Sande became aware that she did not have a 1987 license. Sande testified that she "thought there was something wrong because I hadn't received [a] renewal form and when I went home I began to think about it."

The next day, Sande went to the Board's office, met with the Executive Director, and renewed her license for 1987. She paid a late renewal fee of $40. The Executive Director told Sande that she would be subject to an administrative proceeding for practicing nursing without a current license.[1]

An administrative complaint by the Board charged Sande with violating § 43–12.1–14(7), N.D.C.C., for "willful and repeated violations" of §§ 43–12.1–03 and 43–12.1–15(4), N.D.C.C., in practicing nursing without a license. At the hearing, the Executive Director testified that the Board mailed a license renewal form each October to every currently licensed nurse. Of 10,-000 forms mailed each year, some were

returned by the postal service undelivered. Up to 100 nurses called the Board each year when they did not receive a renewal form. The Board's records did not show that Sande's 1987 renewal form had been returned, undelivered by the postal service. Sande admitted that she was "aware and conscious" that a practicing nurse must have a current license, but testified that she did not realize that she was practicing in 1987 without a current license.

The Board determined that during 1987 Sande "willfully practiced as a registered nurse of her own free will and not under coercion ...;" that Sande, "working a standard five-day workweek, did willfully and repeatedly practice as a registered nurse within North Dakota while she was not licensed by the Board as a registered nurse to perform those duties;" and that it was Sande's "professional and legal duty to first seek and obtain such licensing prior to entering into her duties as a registered nurse...." The Board concluded:

"That the conduct of the respondent, Nancy Njaa Sande, as set forth in the Findings of Fact, constitutes a violation of the North Dakota Nurse Practices Act as set forth in N.D.C.C. § 43–12.1–14(7), in that such conduct constitutes willful and repeated violations of provisions of N.D.C.C. ch. 43–12.1, namely willful and repeated violations of N.D.C.C. §§ 43–12.1–03 and 43–12.1–15(4) by practicing as a registered nurse within North Dakota without being licensed by the Board, because Sande's actions of practicing as a nurse were of her own free will and not done under coercion, and it is not necessary to find she had the intent to violate the statute in order for the Board to conclude that her conduct was willful."

The Board assessed Sande a "license penalty fee" of $460 computed at $5 per day for

---

1. The Executive Director of the Board of Nursing also submitted the information to the Burleigh County State's Attorney. Sande was charged with the misdemeanor offense of practicing as a registered nurse without being licensed. § 43–12.1–15(4), N.D.C.C. Sande and the State agreed to a "Stipulation for Deferred Prosecution and Order" whereby Sande would not be required to enter a plea to the charge, prosecution would be deferred for six months, and the charge would be dismissed with prejudice if she did not violate any criminal laws during that time.

92 working days from July 5, 1987 through November 13, 1987.[2] The Board also directed that Sande be publicly reprimanded to "inform [Sande] that it is her professional responsibility to personally be aware of and follow ... laws that affect her profession." Sande appealed the Board's action to the district court.

The district court concluded that the Board, to discipline Sande under § 43–12.1–14(7), had to prove that Sande was consciously aware that she was practicing without a license. Because there was no evidence of that, the court reversed the Board decision and ordered that the complaint be dismissed. The Board and the State appealed.

## I

The Board asserted that the district court lacked power to hear Sande's appeal because she did not serve the Board with a notice of appeal as statutory procedure dictated. The pertinent part of section 28–32–15, N.D.C.C., states:

> "*Appeal from determination of agency—Time to appeal—How appeal taken.* Any party to any proceeding heard by an administrative agency ... may appeal from such decision within thirty days after notice thereof has been given.... *Such appeal shall be taken by serving a notice of appeal and specifications of error* specifying the grounds on which the appeal is taken, *upon the administrative agency concerned, upon the attorney general or an assistant attorney general, and upon all the parties to the proceeding before such administrative agency,* and by filing the notice of appeal and specifications of error together with proof of service thereof, and the undertaking herein required, with the clerk of the district court to which such appeal is taken." [Emphasis added.]

■ Sande's notice of appeal and specifications of error were not served directly on any member of the Board. These documents were timely served on the assistant attorney general who represented both the Board and the State in the administrative proceedings. The Board admitted that service on the assistant attorney general was proper service on the attorney general, but asserted that the mandate for service on the Board demanded service on at least one of the Board's members. Sande argued, and the district court ruled, that service on the assistant attorney general was sufficient under the Rules of Civil Procedure. We agree.

"[T]he Rules of Civil Procedure govern procedures on appeal from a decision of an administrative agency except where applicable statutes are inconsistent with the Rules." *Schroeder v. Burleigh County Board of Commissioners,* 252 N.W.2d 893, 895 (N.D.1977); Rule 81(b), N.D.R.Civ.P. In *Reliance Insurance Company v. Public Service Commission,* 250 N.W.2d 918 (N.D.1977), we noted that § 28–32–15 does not specify how notice of an appeal is to be served or when that service is deemed made. Relying on Rule 5(b), N.D.R.Civ.P., we concluded that a notice of appeal in an administrative proceeding may be served by mail and that service is completed upon its mailing. *See also City of Casselton v. N.D. Public Service Commission,* 307 N.W.2d 849, 852 (N.D.1981) ["The provisions of Rules 5 and 6 of the North Dakota Rules of Civil Procedure apply to proceedings under § 28–32–15, N.D.C.C."].

The same rule applies here. No statute specifies how the service of a notice of appeal is to be made on an administrative agency. Recourse to the Rules is therefore appropriate. Rule 5(b), N.D.R.Civ.P., provides that "[w]henever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court." The assistant attorney general, who was properly notified of this appeal, represented both the Board and the State in the administrative proceedings.

---

**2.** Amendments to § 43–12.1–14, N.D.C.C., allowing a penalty fee up to $5 per day, became effective on July 5, 1987.

The Board was clearly a "party" in the proceedings inasmuch as it was the "complainant" that filed the complaint against Sande. *See* § 28–32–01(2), (4) and (5), N.D. C.C. Under Rule 5(b), service on the assistant attorney general was proper service on the Board.

The Board asserted that Rule 5 cannot apply before an action in district court has been properly initiated by an appeal, properly filed and served. This argument is contrary to our holding in *Reliance Insurance Company, supra,* and incorrectly assumes that this action was initiated only upon the filing of the notice of appeal. The filing of the notice of appeal in an administrative proceeding is not a commencement of an action, but it is, in effect, a continuation of a proceeding initiated under Chapter 28–32, N.D.C.C.

We conclude that the Board was properly served with the notice of appeal by service on its attorney.

## II

Our review of an administrative decision is governed by § 28–32–19, N.D.C.C., which requires us to affirm: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; (3) if the agency decision is supported by the conclusions of law; and (4) if the decision is in accordance with the law. *Matter of Stone Creek Channel Improvements,* 424 N.W.2d 894, 896 (N.D.1988).

The Board found that Sande had violated § 43–12.1–14(7), N.D.C.C., which says:

> "*Grounds for discipline—Penalties.* The board shall have the power to discipline licensees as necessary by reprimanding the licensee, placing the licensee on probationary status, denying, suspending, or revoking a license or permit to practice nursing issued in accordance with this chapter, if the person is found:
>
> \* \* \* \* \* \*
>
> "7. To be guilty of willfully and repeatedly violating the provisions of this chapter."[3]

According to the Board, provisions of the chapter which Sande "willfully and repeatedly" violated were § 43–12.1–03, N.D. C.C.,[4] requiring a current valid license and § 43–12.1–15(4), N.D.C.C.,[5] making it a

---

3. Section 43–12.1–14 also says:
 "If the licensee is found to have committed any charges in the complaint, the board may reprimand the licensee, place the licensee on probationary status subject to reasonable terms of probation, deny, suspend, or revoke a license. In addition, if the respondent is found by the board to have committed any of the acts set out in this section for which discipline may be imposed, the board may tax costs and disbursements against the respondent as in civil actions, and may further impose a penalty fee if the respondent is found by the board to have committed any of the acts set out in subsections 1 through 4 of section 43–12.1–15. Any fee, costs, and disbursements imposed by the board against the respondent may be paid within a reasonable time and through reasonable periodic payments as specified in the board's order. Any penalty fee imposed may not exceed five dollars for each day or fraction of a day in which the respondent is found by the board to have committed any of the prohibited acts as set out herein, and may not exceed a total of one thousand dollars. A suspended license may be reinstated at any time by the board. A revoked license may be reissued after one year at the board's discretion. An appeal from the final decision of the board may be taken to the district court of Burleigh County

in accordance with the provisions of chapter 28–32. The board shall furnish to the boards of nursing of other states, and to health agencies of this state, a list of the names and addresses of licensees who have been disciplined by the board."

4. Section 43–12.1–03, N.D.C.C., says:
 "*License required—Title—Abbreviation.*—All persons who practice as a registered nurse or a practical nurse for direct or indirect compensation in this state must hold a current valid license from this state. A person who holds a current valid license to practice as a registered nurse in this state may use the title 'registered nurse' and the abbreviation 'R.N.'. A person who holds a current valid license to practice as a practical nurse in this state may use the title 'licensed practical nurse' and the abbreviation 'L.P.N.'. No other person shall assume or claim any such title or abbreviations."

5. Section 43–12.1–15(4), N.D.C.C., says:
 "*Violation—Penalties.*—No person or persons shall:
 . \* \* \* \* \* \*
 "4. Practice as a registered nurse or a licensed practical nurse as defined by this chapter unless duly licensed to do so.

criminal offense for practicing nursing without one.

The arguments on this appeal centered upon the proper construction of "willfully" in the statute. The Board did not contend that Sande was consciously aware that she was not licensed while practicing nursing in 1987. Rather, the Board asserted that the meaning of "willfully" should not be limited to acts performed with evil purpose, but should include any act voluntarily undertaken regardless of whether the actor was conscious that the act constituted a violation. *See, e.g., Matter of Cieminski*, 270 N.W.2d 321, 327 (N.D.1978) ["the term 'willfully,' when used in ... the Code of Judicial Conduct, should be construed to mean that the acts were the performer's free will and were not done under coercion"]; *Commonwealth, State Board of Nurse Examiners v. Rafferty*, 508 Pa. 566, 499 A.2d 289, 292 (1985) [definition of "wilful" is "an intentional, designed act and one without justifiable excuse," but no proof of specific intent to violate a professional nursing act or its regulations is necessary]. Sande argued that "willfully" should require proof that the actor was consciously aware of her violation of a statutory obligation. *See, e.g., Kansas State Board of Nursing v. Burkman*, 216 Kan. 187, 531 P.2d 122, 126 (1975) ["wilful ... generally connotes proceeding from a conscious motion of the will—an act as being designed or intentional as opposed to one accidental or involuntary."]

 Our decision does not turn solely upon the interpretation given to the term "willfully." For discipline under § 43–12.1–14(7), a nurse must be guilty of both "willfully" *and* "repeatedly" violating the provisions of Chapter 43–12.1. The Board, treating each day that Sande practiced without a current license as a separate violation, contended that the "repeated" element is satisfied in this case. However, unless a regulatory provision is made more specific, a "repeated" violation

is usually viewed as a failure to comply with a standard about which a person should be conscious because of prior citations or violations. *See Brooks v. McWhirter Grading Co., Inc.*, 303 N.C. 573, 281 S.E.2d 24, 33 (1981); *George Hyman Const. Co. v. Occupational Safety*, 582 F.2d 834, 838 (4th Cir.1978); Annot., *"When Has Employer 'Repeatedly' Violated Occupational Safety and Health Act,"* 41 A.L.R.Fed. 146 (1979). The Legislature's requirement that a violation be not only "willful," but also "repeated," clearly contradicts the strict liability interpretation advanced by the Board. We conclude that § 43–12.1–14(7) does not apply to a first-time, inadvertent failure to renew a license.

The Board asserted that unless § 43–12.1–14(7) is construed to allow it to discipline Sande for her failure to renew a license, a major underlying purpose of the Nurse Practices Act will be thwarted. We do not decide whether the Board should be authorized to discipline a nurse for a first-time inadvertent failure to renew a license; we only decide whether the Board has been so authorized by § 43–12.1–14(7).

A statute should be construed so that an ordinary person reading it would get from it the usual, accepted meaning. *Wills v. Schroeder Aviation, Inc.*, 390 N.W.2d 544, 545–546 (N.D.1986). We seek to interpret statutory language "purposively in a manner that does not wreak havoc either with the meaning the words will bear or with the intent of the Legislature." *Amerada Hess Corp. v. Conrad*, 410 N.W.2d 124, 131 (N.D.1987). *See also Wisdom v. State, N.D. Real Estate Comm'n*, 403 N.W.2d 19, 21 (N.D.1987). Treating Sande's conduct as "willful" and "repeated" would stretch the meaning of the Nurse Practices Act too far.

We conclude that, as a matter of law, Sande's failure to renew her license was not a "willful" and "repeated" violation of the Nurse Practices Act.[6] Accordingly, we

---

\* \* \* \* \* \*

"Any violation of this section shall be a class B misdemeanor."

6. The Governor recently signed House Bill No. 1169. Section 8 of that measure amends § 43–12.1–14(7), N.D.C.C., to allow the Board to discipline a licensee if the person is found to be "practicing as a registered nurse or a licensed

affirm the district court's judgment reversing the Board's decision and dismissing the complaint.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

practical nurse unless currently licensed to do so."