**Mark Alan McCARTER, Appellant,**

v.

**Earl R. POMEROY, as Insurance Commissioner for the State of North Dakota, Appellee.**

**Civ. No. 900233.**

Supreme Court of North Dakota.

Feb. 21, 1991.

___

Thomas O. Smith, of Zuger, Kirmis, Bolinske & Smith, Bismarck, for appellant. Appearance by Brent J. Edison, Bismarck.

Lynn M. Boughey, Sp. Asst. Atty. Gen., Minot, for appellee.

VANDE WALLE, Justice.

Mark Alan McCarter has appealed from a district court judgment affirming a decision of the Commissioner of Insurance revoking McCarter's nonresident insurance agent's license. We affirm.

After discovering in December, 1988, that McCarter had consented to the revocation of his Minnesota license in 1983, the Commissioner initiated proceedings in January, 1989, to revoke McCarter's nonresident insurance agent's license, which had been continuously in force since 1982. The Minnesota consent order revoking McCarter's Minnesota insurance agent's license recited in part:

> "1. The Commissioner ... is prepared to commence formal action ... based on allegations that he sold 2 endowment policies to Minnesota senior citizens, receiving premium dollars totaling $10,000, and misrepresented the content of the plan, the rate of return and the liquidity of the investment."

The complaint involved here alleged violation of §§ 26.1–26–15 [1] and 26.1–26–42(4), (6), (12), (13) [2], N.D.C.C.

---

**1.** *"26.1–26–15. License requirement—Character.* An applicant for any license under this chapter must be deemed by the commissioner to be competent, trustworthy, financially responsible, and of good personal and business reputation."

**2.** Section 26.1–26–42, N.D.C.C., provides in pertinent part:

"*26.1–26–42. License suspension, revocation, or refusal—Grounds.* The commissioner may suspend, revoke, or refuse to continue or refuse to issue any license issued under this chapter if, after notice to the licensee and hearing, the commissioner finds as to the licensee any of the following conditions:

\* \* \* \* \* \*

"2. An acquisition or attempt to acquire a license through misrepresentation or fraud.

\* \* \* \* \* \*

"4. Any cause for which issuance of the license could have been refused had it then

At the hearing on the complaint, counsel for the Commissioner introduced Exhibit 1, the consent order revoking McCarter's Minnesota license, and Exhibit 2, the statement of charges involved in the Minnesota revocation, and rested. McCarter then moved to dismiss the charges under §§ 26.-1-26–15 and 26.1-26–42(4), (6), N.D.C.C. The hearing officer took the motion under advisement and McCarter presented his defense.

McCarter testified that the allegations in the Minnesota consent order were not true. On cross examination, McCarter testified:

"Q. Okay. Now, if I were to ask you that question today under oath or in a sworn statement, have you, Mr. McCarter, ever had disciplinary action instituted against you in any state, how would you answer that?

"A. At this point I would say yes, in Minnesota.

\*  \*  \*  \*  \*  \*

"Q. Okay. If I were to ask you after that first year at any time on a sworn statement and under oath if your license had been revoked in any state, what would your answer be?

"A. That it had been revoked in Minnesota."

The State then introduced Exhibits 6–16 showing that on applications for licenses in eleven other states, all made after the Minnesota revocation, McCarter had indicated that he had not had any insurance agent licenses revoked. McCarter did not object to the exhibits or attempt to limit the scope of their admissibility.

The hearing officer proposed the following findings of fact:

"5. Respondent signed a Consent to Entry of Order in Minnesota on Novem-

ber 7, 1983, (Ex. 1), acknowledging that he understood the Order and had been advised of his rights.

"6. The Minnesota Consent Order stated that the Respondent had made misrepresentations in the sale of two endowment policies and that his Minnesota license was revoked effective November 14, 1983.

"7. Over five years elapsed from the time of the Minnesota Consent Order until this proceeding was brought to revoke Respondent's license.

"8. No evidence was introduced of any actual wrongful insurance activities in North Dakota other than the Minnesota Consent Order nor was any evidence introduced of any complaints in North Dakota against Respondent.

\*  \*  \*  \*  \*  \*

"10. The Commissioner discovered the Minnesota Consent Order in an investigation of the files of American Life and Casualty Insurance Company of Fargo in December of 1988.

"[11]. The Commissioner has a practice that if an agent's license is revoked in another state, then the North Dakota license is revoked.

\*  \*  \*  \*  \*  \*

"[15]. Exhibits 6 through 16, which are applications for insurance licenses from other states, seriously damages the credibility of the Respondent as a witness as they show he has consistently lied in those applications by representing that he has never had his license revoked in another state. I find that Exhibits 6 through 16 seriously reduce the credibility of the Respondent regarding what he was or

existed and been known to the commissioner at the time of issuance.

\*  \*  \*  \*  \*  \*

"6. In the conduct of affairs under the license, the licensee has used fraudulent, coercive, or dishonest practices, or has shown oneself to be incompetent, untrustworthy, or financially irresponsible.

\*  \*  \*  \*  \*  \*

"12. A violation of, or noncompliance with, any insurance laws, or violation of any

lawful rules or orders of the commissioner or of a commissioner of another state.

"13. The licensee's license has been suspended or revoked in any other state, province, district, or territory."

was not told by Minnesota officials before he signed a Consent Decree."

The hearing officer denied McCarter's motion to dismiss the charges under §§ 26.1–26–15 and 26.1–26–42(4), N.D.C.C.; granted his motion to dismiss the charge under § 26.1–26–42(6), N.D.C.C.; and concluded that there were violations of § 26.1–26–42(4), (12), (13), N.D.C.C. The hearing officer recommended a $500 fine, rather than the suspension or revocation of McCarter's license.

The Commissioner adopted the hearing officer's findings of fact and most of his conclusions of law. Like the hearing officer, the Commissioner denied McCarter's motion to dismiss the charges under §§ 26.-1–26–15 and 26.1–26–42(4), N.D.C.C., and found violations of § 26.1–26–42(4), (12), (13), N.D.C.C. Unlike the hearing officer, the Commissioner denied McCarter's motion to dismiss the charge under § 26.1–26–42(6), N.D.C.C. The Commissioner found, in addition to the violations found by the hearing officer, violations of §§ 26.1–26–15 and 26.1–26–42(2), (6), N.D.C.C. The Commissioner made the following additional conclusions of law:

"7. The Motion to Dismiss N.D.C.C. § 26.1–26–42(6) is denied. Subsection (6) states that a license can be revoked if, 'In the conduct of affairs under the license, the licensee has used fraudulent, coercive, or dishonest practices, or has shown oneself to be incompetent, untrustworthy, or financially irresponsible'. The meaning and intent of subsection (6), together with its unambiguous language, clearly makes it illegal for a North Dakota licensee to engage in any of the prohibited conduct virtually anywhere in the world while in possession of a North Dakota license. It would be absurd to read the statute in such a way that it would allow a licensee to literally rob and steal from insureds in other states and then escape prosecution in North Dakota because the prohibited conduct was not engaged in here. Respondent, while possessing a valid North Dakota license, engaged in conduct directly related to insurance which was fraudu-

lent and dishonest, said misconduct occurring in our sister state, Minnesota.

"8. I may, on my own motion, conform the complaint to adhere to the evidence presented at hearing. Respondent was present at hearing and was competently represented by not one, but two, attorneys. Respondent presented no objection to the introduction of Exhibits 6 through 16 which clearly showed that, while in possession of a valid North Dakota license, Respondent lied in sworn statements on each of the exhibit license applications that he had never been revoked in another state. N.D.C.C. § 26.1–26–42(2) permits that a license can be revoked if a licensee has acquired or attempted to acquire a license through misrepresentation or fraud. By clear and convincing evidence it was shown that the Respondent acquired at least 11 different nonresident insurance licenses through misrepresentation and fraud.

"9. Further, the Respondent lied under oath at the hearing when he responded that, yes he would, at any time since 1983, disclose his Minnesota revocation in any sworn statement which required him to do so, including license applications to other states. This he did not do as evidenced by Exhibits 6 through 16. Respondent's conduct in lying to the hearing officer and to at least 11 other state regulators in order to procure licenses during the 1986 through 1987 time frame, is an offense of the highest order. I conclude that such conduct violates N.D.C.C. § 26.1–26–42(6). While holding a valid North Dakota license, Respondent has engaged in conduct, directly related to insurance, which was fraudulent and dishonest and he has shown himself to be untrustworthy."

The Commissioner revoked McCarter's nonresident insurance license. The district court affirmed the Commissioner's decision and McCarter appealed, contending (1) that all alleged statutory violations other than those under § 26.1–26–42(12), (13), N.D.C.C., should have been dismissed when the

State rested after introducing the exhibits showing the Minnesota revocation; (2) that revocation was barred by § 28–01–18(2), N.D.C.C.; (3) that the Commissioner denied McCarter a fair hearing by amending the complaint to include a statutory violation not specified in the complaint; and (4) that the Commissioner denied him a fair hearing by not following the hearing officer's recommendations.

We disagree with McCarter's contention that all alleged statutory violations, except § 26.1–26–42(12), (13), N.D.C.C., should have been dismissed when the State rested after introducing the two exhibits showing the Minnesota license revocation. In our view, the evidence of the Minnesota revocation also supported the charges under § 26.1–26–42(4), (6), N.D.C.C., and was also relevant to § 26.1–26–15, N.D.C.C., made applicable to agents with existing licenses by § 26.1–26–42(4), N.D.C.C.

McCarter contends that proceedings to revoke his North Dakota license were barred by § 28–01–18(2), N.D.C.C., because not commenced within two years of the Minnesota revocation in 1983. The Commissioner promptly initiated proceedings to revoke McCarter's North Dakota license upon discovering the Minnesota revocation in December 1988. Section 28–01–18, provides:

"The following actions must be commenced within two years after the claim for relief has accrued:

\*     \*     \*     \*     \*     \*

"2. An action upon a statute for a forfeiture or penalty to the state."

A statute of limitations in a civil proceeding is an affirmative defense. *Hagen v. Altman*, 79 N.W.2d 53 (N.D.1956). Generally, a party relying on a statute of limitations has the burden of proving that the action is barred. 54 C.J.S., *Limitations of Actions* § 294 (1987). "Although courts generally apply general statutes of limitation to administrative proceedings, the opposite is true with respect to proceedings which are in the public interest, such as proceedings to suspend or revoke a license to practice medicine." Anno., *Applicability of Statute of Limitations or Doctrine of Laches to Proceeding to Revoke or Suspend License to Practice Medicine*, 51 A.L.R.4th 1147, 1151 (1987). See also, 2 Am.Jur.2d, *Administrative Law* § 322 (1962). In a case involving the revocation of an insurance agent's licenses, the court in *Ready v. Grady*, 243 Cal.App.2d 113, 116, 52 Cal.Rptr. 303, 306 (1966), observed: "The function of an administrative proceeding such as the one here involved is neither criminal nor quasi-criminal in character. It has been held that the purpose is not the punishment of the licensee, but rather the protection of the public." From the arguments presented, we are not persuaded that § 28–01–18(2), N.D.C.C., barred revocation of McCarter's license. However, because of our resolution of other issues raised in this case concerning violations that did occur within two years, such as lying on applications for licenses in other states, we do not determine if the district court correctly concluded that § 28–01–18(2), N.D.C.C., was inapplicable to this case.

The complaint filed in this case sought to revoke McCarter's nonresident insurance agent's license under §§ 26.1–26–15 and 26.1–26–42(4), (6), (12), (13), N.D.C.C. The hearing officer found violations of § 26.1–26–42(4), (12), (13), N.D.C.C., and recommended dismissal of allegations involving § 26.1–26–42(6), N.D.C.C. The Commissioner found violations under §§ 26.1–26–15 and 26.1–26–42(4), (6), (12), (13), N.D.C.C. In addition, based on Exhibits 6–16, showing that on applications for insurance agent licenses in eleven other states McCarter had indicated that he had not had any insurance agent licenses revoked, the Commissioner on his own motion "conform[ed] the complaint to adhere to the evidence presented at hearing," and concluded that McCarter had violated § 26.1–26–42(2), N.D.C.C.:

"N.D.C.C. § 26.1–26–42(2) permits that a license can be revoked if a licensee has acquired or attempted to acquire a license through misrepresentation or fraud. By clear and convincing evidence it was shown that the Respondent acquired at least 11 different nonresident

insurance licenses through misrepresentation and fraud."

McCarter contends that the Commissioner denied his right to a fair hearing by amending the complaint on his own motion to include a statutory violation not specified in the complaint and notice of hearing.

As McCarter has noted in his brief, "[t]he Administrative Agencies Practices Act, Chapter 28–32, N.D.C.C., does not contain any provision for amendments of administrative complaints to conform to evidence presented at an administrative hearing." In appeals from administrative agency decisions, this court has applied some of our North Dakota Rules of Civil Procedure to proceedings commenced before administrative agencies. *See, e.g., Shafer v. Job Service,* 464 N.W.2d 390 (N.D.1990); *Sande v. State,* 440 N.W.2d 264 (N.D.1989); *Evanson v. Wigen,* 221 N.W.2d 648 (N.D. 1974). In *Colgate–Palmolive Co. v. Dorgan,* 225 N.W.2d 278 (N.D.1974), however, this court held that an administrative hearing examiner could not impose a judicial sanction under Rule 37, N.D.R.Civ.P., for failure to comply with a discovery request.

In civil actions, Rule 15(b), N.D.R.Civ.P., authorizes the amendment of pleadings to conform to the evidence, providing in part:

> "(b) Amendments to Conform to the Evidence. If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of those issues."

McCarter has not presented any persuasive reason why administrative pleadings should not be allowed to be similarly amended. The Commissioner could have initiated a new proceeding in response to the statutory violations disclosed by the evidence at the hearing. *Williams Electric Cooperative, Inc. v. Montana–Dakota Utilities Co.,* 79 N.W.2d 508 (N.D.1956).

Although he did not object to the introduction of Exhibits 6 through 16 or try to limit the scope of their admissibility, McCarter argues that "there is no showing in this case that the alleged violation by McCarter of Section 26.1–26–42(2) was 'tried by express or implied consent of the parties.' " McCarter has not alleged or demonstrated any way in which he was prejudiced because the Commissioner amended the administrative complaint to conform to the evidence admitted at the hearing, rather than initiating a new proceeding based upon the evidence admitted at the hearing. In a case such as this, where investigative, accusative, and adjudicative functions are united in one, it clearly would be a better practice for an administrative officer to provide a respondent with notice of an intent to amend administrative pleadings to conform to the evidence and to provide an opportunity to be heard, rather than summarily amending without such notice and opportunity. Under the circumstances presented, however, we find no reversible error in the procedure employed by the Commissioner.

Finally, McCarter contends that, by failing to follow the hearing officer's recommendation, the Commissioner did not afford him a fair hearing. The hearing officer recommended a $500 fine, rather than suspension or revocation of McCarter's license. The Commissioner rejected the hearing officer's recommendation and revoked McCarter's license. An administrative officer is not required to adopt a hearing officer's recommendations. *Matter of Stone Creek Channel Improvements,* 424 N.W.2d 894 (N.D.1988). We have said, however, that the decision of an administrative officer who rejects a hearing officer's recommendations should satisfactorily explain the rationale for not following the hearing officer's recommendations. *Redwood Village Partnership, Ltd. v. North Dakota Dep't of Human Services,* 420 N.W.2d 333 (N.D.1988); *Medcenter One, Inc. v. Job Service North Dakota,* 410 N.W.2d 521 (N.D.1987); *Schultz v. North Dakota Dep't of Human Services,* 372 N.W.2d 888 (N.D.1985).

The Commissioner found that McCarter had committed more statutory violations than the hearing officer found and viewed the violations as being more serious than did the hearing officer. We have already addressed the additional violations. As to the serious nature of the violations in the Commissioner's view, the Commissioner stated in his decision:

"Respondent's conduct in lying to the hearing officer and to at least 11 other state regulators in order to procure licenses during the 1986 through 1987 time frame, is an offense of the highest order. I conclude that such conduct violates N.D.C.C. § 26.1–26–42(6)....

\*    \*    \*    \*    \*    \*

"The Conclusions of Law and Order rendered herein are based upon the Findings of Fact as determined by the Hearing Officer. It is my view that the Findings substantiate far more serious violations of the North Dakota Century Code than were spelled out in the original Conclusions of Law proposed by the Hearing Officer. Based upon the aforementioned Conclusions of Law, this Order will reflect a penalty consistent with dispositions imposed by the Department in other similar administrative actions and consistent with the Insurance Department's view of the seriousness of the violations found in the Findings of Fact."

The Commissioner's decision finding more statutory violations than the hearing officer did and explaining his view of the seriousness of the violations adequately explains his rationale for not following the hearing officer's recommendation.

Affirmed.

ERICKSTAD, C.J., and LEVINE, MASCHKE and GIERKE, JJ., concur.