**Roberta ANDERSON, Claimant and Appellee,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant.**

**and**

**Frankly Scarlett, Inc., Respondent.**

**Civil No. 960046.**

Supreme Court of North Dakota.

Sept. 10, 1996.

Dean J. Haas (argued), of Dietz & Little, Bismarck, for claimant and appellee.

Brent J. Edison (argued), Special Assistant Attorney General, of Zuger Kirmis & Smith, Bismarck, for appellant.

MESCHKE, Justice.

The North Dakota Workers Compensation Bureau appealed from a district court judgment reversing the Bureau's dismissal of Roberta Anderson's claim as untimely filed. We affirm.

On November 7, 1984, Dr. Gregory Hennenfent, M.D., examined Roberta Anderson, who was experiencing various physical symptoms including numbness in her hands. One of his diagnoses was carpal tunnel syndrome, a condition of pinched nerves causing numbness in the fingers and hand. Even though she was examined on a number of later occasions, Anderson's medical records from Dr. Hennenfent and other doctors at Mid Dakota Clinic, P.C., contain no other reference to carpal tunnel syndrome. Without interrup-

tion, she continued working as a cosmetologist.

In 1994, her symptoms of carpal tunnel syndrome significantly worsened, necessitating surgery by Dr. Curtis Juhala. Anderson filed a claim for workers compensation benefits on July 18, 1994. After a formal hearing, the Bureau found Anderson was "well aware that her carpal tunnel was work related as early as 1984." The Bureau dismissed Anderson's claim because it was not filed within one year of Anderson's injury, as required by NDCC 65–05–01. Anderson appealed to the district court, who concluded the claim was timely and reversed the Bureau's decision.

On appeal, we review the Bureau's decision and not the decision of the district court. *E.g., Stepanek v. North Dakota Workers Compensation Bureau,* 476 N.W.2d 1, 3 (N.D.1991). Our review is limited to the record before the agency, and we do not consider the conclusions of the district court. *Id.* We review an administrative agency decision under NDCC 28–32–19, and it requires us to affirm the agency's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *E.g., White v. North Dakota Workers Compensation Bureau,* 441 N.W.2d 908, 909 (N.D.1989). "In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the Bureau." *Id.* at 909. Rather, as *White* explains at 909–10, "we determine whether the Bureau could have reasonably reached its factual determinations by the greater weight of all the evidence."

The Bureau contends Anderson bears the burden of proving she is entitled to workers compensation benefits. However, a defense based on the statute of limitations in a civil proceeding is an affirmative defense. *E.g., In Interest of K.B.,* 490 N.W.2d 715, 717 (N.D.1992). As *McCarter v. Pomeroy,* 466 N.W.2d 562, 566 (N.D.1991)(citing 54 C.J.S., *Limitations of Actions* § 294 (1987)), points out: "Generally, a party relying on a statute of limitations has the burden of proving that the action is barred."

The Bureau applied the statute of limitations under NDCC 65–05–01 as amended in 1993. However, NDCC 1–02–10 provides: "No part of this code is retroactive unless it is expressly declared to be so." Under that rule of statutory interpretation, "[a]ll statutes enacted by the legislature are to be applied prospectively, i.e., they are to be applied only to causes of action that arise after the effective date of the statute, unless the legislature clearly expresses that they are to be applied retroactively." *Reiling v. Bhattacharyya,* 276 N.W.2d 237, 240–41 (N.D.1979); *see also State v. Hersch,* 445 N.W.2d 626, 630 (N.D.1989). The Legislature did not direct retroactive application of NDCC 65–05–01 in its 1993 amendment. The Bureau's findings are based on pre–1993 evidence, and it contends Anderson's claim arose before the 1993 amendment. "Unless otherwise provided, the statutes in effect on the date of an injury govern workers' compensation benefits." *Thompson v. North Dakota Workers' Compensation Bureau,* 490 N.W.2d 248, 251 (N.D.1992). We therefore conclude the 1993 amendment is inapplicable.

Before the 1993 amendment, the pertinent part of NDCC 65–05–01 directed:

All original claims for compensation shall be filed within one year after the injury.... When the actual date of injury cannot be determined with certainty the date of injury shall be the first date that a reasonable person knew or should have known that the injury was related to employment.

S.L.1979, Ch. 652, § 1. Under that version of the statute, the standard for determining whether a claim is timely filed "is whether or not the claimant knew or should have known that she had a *compensable* work-related injury." *Stepanek v. North Dakota Workers Compensation Bureau,* 476 N.W.2d at 5 (emphasis in original); *see also White v. North Dakota Workers Compensation Bureau,* 441 N.W.2d 908. Otherwise, as *White,* 441 N.W.2d at 910, explains, an employee would be compelled to rush in with a claim for

every minor ache, pain, or symptom in order to make sure any future claim for compensation is not deemed untimely. *Stepanek,* 476 N.W.2d at 5, emphasizes: "[T]he term 'injury' as used in our statute must be read with reference to a 'compensable' injury."

■ To have a compensable injury, a claimant must know or have reason to know the significance, or seriousness, of her condition and that the injury is work-related. For instance, in *Stepanek,* 476 N.W.2d 1, the claimant did not seek medical attention for her knee injury until the pain became disabling. We held the statute of limitations did not run during the period the claimant thought her work-related injury was minor. In *White,* 441 N.W.2d 908, we held the statute of limitations did not start running, even though the claimant thought he had a work-related back injury, until his injury was correctly diagnosed as a herniated disc. In *Teegarden v. North Dakota Workmen's Compensation Bureau,* 313 N.W.2d 716 (N.D. 1981), we noted the absence of medical advice, and held there was insufficient medical evidence showing the claimant knew or should have known his lung condition was work-related. In *Evjen v. North Dakota Workers Compensation Bureau,* 429 N.W.2d 418, 420 (N.D.1988), we affirmed the dismissal of a claim as untimely, but noted:

> Unlike the claimant in *Teegarden,* Evjen received specific medical advice that his injury was *related to his employment* and also that it was a *significant health problem.* Without that advice, this would be a different case because headaches are fairly common afflictions often suffered by many from job stress. A reasonable lay person would not immediately file a claim for compensation upon learning that occasional headaches were work-related.

(Emphasis added). *Grotte v. North Dakota Workers' Compensation Bureau,* 489 N.W.2d 875 (N.D.1992), and *Rogers v. North Dakota Workers Compensation Bureau,* 482 N.W.2d 607 (N.D.1992), are also distinguishable from *Teegarden* because in each of those cases, as in *Evjen,* the claimant had specific medical advice his injury was work-related and there was evidence the claimant was aware of the seriousness of his health problems. The ma-

jority concluded those claimants knew they had compensable injuries.

■ Whether Anderson knew or should have known she had a compensable injury must be determined under a reasonable person standard. *See White,* 441 N.W.2d at 911. In *Teegarden,* 313 N.W.2d at 718, we defined a reasonable person as an ordinary layperson of the same skill and knowledge as the claimant. As *Teegarden* at 719 illustrates, Anderson is not expected to have knowledge in medical matters comparable to a doctor.

The Bureau based its conclusion that Anderson's claim was untimely on her medical and chiropractic records. On November 7, 1984, Dr. Hennenfent noted in his medical record from his examination of her:

> She has a history of numbness in both hands which occur while working with her hands. She is a beautician and does a lot of hand motion. During the day her hands may feel somewhat numb and [have] decreased strength....
>
> Positive Tanil's sign of both wrists. There was evidence of pons weakness of both hands....
>
> Impression: ... 2. Carpal tunnel syndrome....
>
> Plan: ... Also cockup splints bilat. for h.s. for the next few wks....

Anderson began receiving chiropractic treatment from Dr. William Swanson in 1985 after being in a car accident. In Anderson's chiropractic records, dated January 9, 1985, carpal tunnel syndrome is listed as one of several complaints. Dr. Swanson noted Anderson was experiencing hand numbness.

The fact Anderson sought medical attention in 1984 does not establish she then knew or should have known she had a compensable work injury. *See White,* 441 N.W.2d at 911. The records prepared by Dr. Hennenfent and Dr. Swanson do not report they advised Anderson about the significance of her condition. Anderson testified she never even saw the records. A claimant is not charged with knowledge of opinions and conclusions in medical records she has not reviewed. *See Teegarden,* 313 N.W.2d at 719. Neither Dr. Hennenfent nor Dr. Swanson were deposed to determine what they advised Anderson

about her condition, its eventual course, or the causal connection between Anderson's employment and her condition.

 Anderson testified that she did not know her work was the cause of her injury even though she felt symptoms at work. A person who experiences minor pain or other symptoms while working does not know, or have reason to know, of a significant work-related injury. *See Stepanek*, 476 N.W.2d 1 (the claimant's knee pain at work was insufficient to establish the claimant knew or should have known she had a compensable work-related injury). Without specific medical advice, Anderson had no reason to know in 1984 the potential seriousness of her injury or that it would become disabling ten years later. There is no evidence either Dr. Hennenfent or Dr. Swanson advised Anderson to restrict her work due to carpal tunnel syndrome.

There is no evidence Anderson missed work because of her injury before being examined by Dr. Juhala on June 30, 1994. That a person continues to work after experiencing symptoms is evidence the person is unaware an injury is a "significant health problem." *Stepanek*, 476 N.W.2d at 6, n. 5. There is also no evidence Anderson incurred any significant medical expense from carpal tunnel syndrome before seeing Dr. Juhala in 1994. Without loss of work time, significant medical expense, or specific medical advice, a reasonable person would not reasonably know of a compensable work injury.

When Anderson's injury became disabling in 1994, and she was informed by Dr. Juhala she had a compensable injury, Anderson promptly filed her claim. On this record, we conclude the Bureau could not reasonably determine Anderson knew or should have known she had a compensable injury before being examined by Dr. Juhala in June of 1994. The Bureau's contrary finding is not supported by a preponderance of the evidence, and its conclusion that Anderson's claim is untimely is neither supported by findings nor in accordance with the law.

We affirm the district court judgment reversing the Bureau's denial of Anderson's claim as untimely.

NEUMANN, Justice, concurring specially.

I cannot join Justice Meschke's opinion today because I share some of Chief Justice VandeWalle's concern regarding the injection of affirmative defense jurisprudence into our workers' compensation statutory framework. In my opinion, the affirmative defense issue was not adequately briefed and argued to us. Without adequate presentation to aid my ponderous thought processes, I fear the possibility of unintended consequences. I, therefore, am not yet ready to join in placing on the Bureau the burden of asserting the affirmative defense of statute of limitations.

Nevertheless, I concur in the result, and vote to affirm the district court's reversal of the Bureau's dismissal of Roberta Anderson's claim. The Bureau, in asserting Anderson's claim was not timely filed in 1994, argues Anderson should have brought her claim some ten years earlier, when it was first suggested her carpal tunnel symptoms, which at that point were relatively mild, might be work-related. Despite the fact the Bureau makes that argument today, I find it very difficult to believe the Bureau would have accepted liability in 1984 for what would have been presented as a work-related repetitive stress injury that had not yet caused any lost job time, or required the claimant to incur any medical expense beyond a pair of wrist splints. Without some assurance the Bureau would have acted in 1984 in a manner consistent with the argument it makes today, I cannot agree with its dismissal of Anderson's claim.

MARING, J., concurs.

VANDE WALLE, Chief Justice, dissenting.

Relying on *Teegarden v. N.D. Workmen's Comp. Bur.*, 313 N.W.2d 716 (N.D.1981) and the record in this case, the majority concludes there is no direct evidence Anderson was informed by her doctor that her work activities are a substantial contributing factor in the development of her injury. The facts in this case are distinguishable from *Teegarden* and I dissent.

Because of the date of the "injury," before 1993, the majority rejects application of the

1993 amendment to section 65–05–01, NDCC. That amendment provides that when the date of the actual injury cannot be determined with certainty, the date of the injury is the first date a reasonable person knew or should have known that "the employee suffered a compensable injury *and the employee was informed by the employee's treating health care provider that the employee's work activities are a substantial contributing factor in the development of the employee's injury or condition.*" Emphasis added. It appears to me that the Legislature simply codified the *Teegarden* holding and the majority's reliance on *Teegarden* implements the 1993 amendment. *See* 1993 minutes of the House and Senate Industry, Business and Labor Committees Re: SB 2040 (amending § 65–05–01, NDCC).

Neither *Teegarden* nor the 1993 amendment determine the burden of proof. The employee has the burden of proving he or she is eligible for worker compensation benefits. NDCC § 65–01–11. I am unconvinced the Legislature or *Teegarden* intended to change that statutory requirement. I particularly disagree with that portion of the majority opinion which analyzes and seems to introduce into the worker compensation law the concept of "defense based on the statute of limitations in a civil proceeding is an affirmative defense." It can only blur what heretofore has been a straightforward statutory provision. If the affirmative-defense concept applies, and if an issue of timely filing of a claim is raised, then the employer or the Bureau will not only have to prove when an employee knew or should have known the disease was work related but also when, for example, the employee fell and broke a leg at work!

Significantly, in *Teegarden* this court noted the "Bureau made no specific finding of fact as to when the claimant knew or should have known that his disability was fairly traceable to his employment, nor are we aware of any evidence that establishes this fact." *Teegarden*, 313 N.W.2d at 719. Significantly, the employee's pneumonia and bronchitis problem in *Teegarden* could have been caused by smoking, the grain dust at the place of employment, or both, and, as the

opinion noted, "are diseases common to the general public." *Teegarden*, 313 N.W.2d at 719. Like *Teegarden*, the doctor's notes here indicate the injury was job related. Concededly, in *Teegarden*, that was determined insufficient evidence the doctor had informed the patient, perhaps a strange determination in view of today's "full disclosure" by physicians.

But, unlike *Teegarden*, here the Bureau did make specific findings as to when Anderson should have known the carpal tunnel syndrome was caused by her work. Unlike *Teegarden*, there is evidence to support that finding not only from the doctor's notes but in Anderson's own admission on a questionnaire that she had been told her pain was related to her work and that she had been told that "in the early 80's." Anderson attempts to minimize this admission by arguing that had she filed a claim in 1984, the Bureau would have likely denied payment on the ground that the consultation was for another purpose and on the ground the doctor "had not stated an opinion that the work as a beautician caused the carpal tunnel syndrome." Not only is that speculation on Anderson's part, it does not excuse a delay of 10 years in filing a claim. If, as I understand, carpal tunnel syndrome is progressive, Anderson's position is that although she knew it was work related, she could choose her own time to have surgery and that is the time when "she knew or should have known" the carpal tunnel problem was work related. I do not believe that is what the Legislature intended, for that position bodes poorly for those situations in which the injury or disease is one for which preventive measures at work may be implemented to avoid further injury. That is, as I understand, for purposes for example, true for some carpal tunnel problems caused by keyboarding. Preventive measures and training may avoid further injury.

I believe that applying *Teegarden* and section 65–05–01, NDCC, as amended, there is ample evidence to sustain the Bureau's findings· under our standard of review. This case is factually comparable to *Evjen v. N.D. Workers Comp. Bureau*, 429 N.W.2d 418 (N.D.1988) and factually distinguishable from

*Teegarden* and *White v. N.D. Workers Comp. Bureau,* 441 N.W.2d 908 (N.D.1989). I would reverse the decision of the trial court and reinstate the Bureau's decision. I therefore dissent.

SANDSTROM, Justice, dissenting.

I join in the Chief Justice's dissent, and write separately to highlight flawed analysis in the majority opinion.

The majority writes:

"The Bureau contends Anderson bears the burden of proving she is entitled to workers compensation benefits. However, a defense based on the statute of limitations in a civil proceeding is an affirmative defense. *E.g., In Interest of K.B.,* 490 N.W.2d 715, 717 (N.D.1992). As *McCarter v. Pomeroy,* 466 N.W.2d 562, 566 (N.D. 1991) (citing 54 C.J.S., *Limitations of Actions* § 294 (1987)), points out: 'Generally, a party relying on a statute of limitations has the burden of proving that the action is barred.' "

The flaws in the majority opinion are that this is an appeal of an administrative proceeding, not a civil action, and there is a specific statute which controls.

Unlike *In Interest of K.B.,* this is not a civil lawsuit. The Rules of Civil Procedure "govern the procedure in the district courts in all suits of a civil nature...." N.D.R.Civ.P. 1. "A civil action is commenced by the service of a summons." N.D.R.Civ.P. 3. That is not the case here.

The general rule for claims for workers compensation benefits is:

"It has been said that whether a written claim was filed in time under the statute is primarily a question of fact. The burden of proof on this issue is on the claimant."

82 Am.Jur.2d *Workers' Compensation* § 530 (1992) (footnotes omitted).

North Dakota's specific statute places the burden of establishing entitlement to benefits on the claimant:

"Any claimant against the fund, however, has the burden of proving by a preponderance of the evidence that the claimant is entitled to participate in the same."

N.D.C.C. § 65–01–11. The only circumstances in which the burden of proof is placed on the Bureau are specified in the same statute:

"If the bureau or an employer claims that an employee is not entitled to the benefits of the North Dakota Workers' Compensation Law by reason of the fact that the employee's injury was caused by the employee's willful intention to injure himself, or to injure another, or by reason of the voluntary impairment caused by use of alcohol or illegal use of a controlled substance by the employee, the burden of proving such exemption or forfeiture is upon the bureau or upon the person alleging the same...."

N.D.C.C. § 65–01–11.

North Dakota's specific statute controls over general case law. N.D.C.C. § 1–01–06 ("In this state there is no common law in any case where the law is declared by the code.") The burden of proving entitlement to benefits is on the claimant. The legislature's enumeration of the Bureau having the burden in specified cases excludes it from having the burden in other cases, including the statute of limitations. As this Court said in another case involving the Bureau, " '[t]here exists a principle of statutory interpretation that the mention of one thing implies the exclusion of another.' " *Little v. Tracy,* 497 N.W.2d 700, 705 (N.D.1993) (citing *In re Township 143 North, Range 55 West, Cass County,* 183 N.W.2d 520, 529 (N.D.1971)). "It is a general principle of statutory interpretation that mention of one thing implies exclusion of another." *In re Township* (citing *Dixon v. Kaufman,* 79 N.D. 633, 58 N.W.2d 797 (1953); 50 Am.Jur. *Statutes,* Section 244; 82 C.J.S. *Statutes* § 333; *Nome State Bank v. Brendmoen,* 70 N.D. 391, 295 N.W. 82 (1940)).

I would reverse the district court and affirm the Bureau.