2005 ND 44

**Robert RINGSAKER, Claimant and Appellant,**

v.

**WORKFORCE SAFETY & INSURANCE FUND, Appellee,**

and

**Yellow Freight System, Respondent.**

No. 20040155.

Supreme Court of North Dakota.

Feb. 24, 2005.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Lawrence A. Dopson, Special Assistant Attorney General, Bismarck, N.D., for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Robert Ringsaker appealed from a district court judgment affirming the order of Workforce Safety and Insurance ("WSI") dismissing his claim for benefits. We affirm, concluding WSI's finding that Ringsaker failed to file a timely claim for benefits within one year of his work injury is supported by a preponderance of the evidence.

I

[¶ 2] Ringsaker is employed as a truck driver and loading dock worker. In late 1996, Ringsaker injured his shoulder while unloading a truck at work. When the pain in his shoulder continued he consulted Dr. Varberg, an orthopedic surgeon, on January 21, 1997. Ringsaker told Dr. Varberg that he had hurt his shoulder at work. Dr. Varberg's medical notes indicate his diagnosis was rotator cuff syndrome, and Ring-

saker was given an injection to alleviate the pain.

[¶ 3] Over the next few months, Ringsaker saw Dr. Varberg and Dr. Kneifel. Their notes continued to indicate Ringsaker's pain was caused by rotator cuff problems, and he received additional injections for pain. Dr. Kneifel's notes from a February 8, 1997, exam state Dr. Kniefel's diagnosis was "[r]ight shoulder impingement syndrome with possible rotator cuff tear." Dr. Varberg's notes from a February 19, 1997, exam indicate Ringsaker "certainly very well may have a rotator cuff tear." Dr. Varberg's notes from a March 12, 1997, exam state that "[t]here is still tenderness over the rotator cuff and pain on abduction and crepitation in the area of the rotator cuff," and indicated an MRI would be performed. Dr. Varberg's notes from a March 14, 1997, follow-up visit indicate that the MRI showed "a very minimal amount of degenerative arthritic change in the acromioclavicular joint." Dr. Varberg's notes concluded: "I still think his problem mainly is with the rotator cuff and not with the AC joint."

[¶ 4] Ringsaker alleges his doctors never told him his shoulder pain was related to a possible rotator cuff tear or other rotator cuff problems. He claims Dr. Varberg told him his problems were caused by arthritis in his shoulder, and he therefore did not file a claim for workers compensation benefits because he did not believe benefits were available for arthritis.

[¶ 5] Ringsaker continued to have problems with his shoulder and went to the Mayo Clinic in October 1999. Doctors there diagnosed a pinched rotator cuff, and a second exam in January 2000 showed a possible torn rotator cuff which would require surgery. Ringsaker eventually had surgery to repair the torn rotator cuff in October 2000. Ringsaker claims he was never advised he had a possible torn rotator cuff until the January 2000 consultation with doctors at the Mayo Clinic. He had up to that time never missed work because of the injury and his health insurance had paid the medical bills.

[¶ 6] Ringsaker filed a claim for benefits on February 3, 2000. WSI denied his claim, and Ringsaker requested a hearing before an administrative law judge ("ALJ"). The ALJ found that Ringsaker's injury was work related, but that Ringsaker had failed to file a timely claim for benefits within one year after he knew or should have known he had a work-related injury. WSI adopted the ALJ's recommended findings of fact, conclusions of law, and order, and dismissed Ringsaker's claim for benefits.

[¶ 7] Ringsaker appealed to the district court. When WSI filed its brief three days late, the court as a sanction refused to consider the tardy brief and entered judgment ordering WSI to pay benefits to Ringsaker. We reversed the judgment on appeal, concluding the district court had abused its discretion in determining the severity of the sanction imposed. *See Ringsaker v. North Dakota Workers Comp. Bureau*, 2003 ND 122, ¶ 14, 666 N.W.2d 448.

[¶ 8] On remand, the district court on the merits affirmed WSI's order dismissing Ringsaker's claim for benefits. Ringsaker has now appealed from the district court judgment, arguing WSI erred in finding that he had failed to file a timely claim for benefits.

II

[¶ 9] Under N.D.C.C. § 28-32-46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On an appeal from the district court's ruling on an administrative appeal, this Court reviews the agency order in the same manner. N.D.C.C. § 28–32–49; *Miller v. Workforce Safety and Ins.*, 2004 ND 155, ¶ 6, 684 N.W.2d 641; *Zander v. Workforce Safety and Ins.*, 2003 ND 194, ¶ 6, 672 N.W.2d 668.

■ [¶ 10] We have clarified our scope of review in appeals from decisions of administrative agencies:

We review the decision of the administrative agency, rather than that of the district court, although the district court's analysis is entitled to respect. We exercise restraint in deciding whether the agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. We decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record. Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision.

*Paul v. Workforce Safety and Ins.*, 2003 ND 188, ¶ 11, 671 N.W.2d 795 (citations omitted).

### III

■ [¶ 11] The sole question presented on appeal is whether WSI's finding that Ringsaker failed to file a claim for benefits within one year from when he knew or should have known he had suffered a work-related injury is supported by a preponderance of the evidence.

[¶ 12] Filing of claims for workers compensation benefits is governed by N.D.C.C. § 65–05–01, which provides in pertinent part:

All original claims for benefits must be filed by the injured employee, or someone on the injured employee's behalf, within one year after the injury or within two years after the death. The date of injury for purposes of this section is the first date that a reasonable person knew or should have known that the employee suffered a work-related injury and has either lost wages because of a resulting disability or received medical treatment.

The statute expressly provides that no benefits are allowed if the claimant fails to file a written claim for benefits within the specified time. N.D.C.C. § 65–05–01.

[¶ 13] Ringsaker argues he did not know his shoulder injury was work related until he was diagnosed with a torn rotator cuff at the Mayo Clinic in January 2000. He therefore claims his February 3, 2000, claim was timely.

[¶ 14] Ringsaker's argument is premised entirely upon his assertion that his doctors did not, in 1997, advise him that his shoulder pain was caused by rotator cuff problems. Rather, he claims he was told that his shoulder problems were caused by arthritis. He contends that he did not file a claim at that time because he believed arthritis was a general condition that was not work related and that he would not be eligible for benefits.

[¶ 15] WSI rejected Ringsaker's argument, effectively concluding that his testimony that his doctors had told him his problems were caused solely by arthritis was not credible. WSI specifically noted the "substantial medical evidence of record, that is contrary to his position." Notwithstanding Ringsaker's testimony that his doctors in 1997 told him his shoulder pain was caused by arthritis, all of the contemporaneous medical records indicate that the doctors consistently concluded Ringsaker's shoulder pain was caused by a rotator cuff problem. Ringsaker did not call the doctors to testify nor provide depositions or affidavits to corroborate his assertion that the doctors never told him he had a rotator cuff problem, but only arthritis. The only mention of arthritis in the 1997 records is in Dr. Varberg's March 14, 1997, notes, which indicated there was "a very minimal amount of degenerative arthritic change" in the AC joint. Dr. Varberg, however, concluded in his notes that he still believed Ringsaker's main problem was the rotator cuff, not the AC joint.

[¶ 16] Ringsaker argues that under the "reasonable person" standard of N.D.C.C. § 65–05–01, as interpreted in *Klein v. North Dakota Workers Comp. Bureau*, 2001 ND 170, 634 N.W.2d 530, and *Anderson v. North Dakota Workers Comp. Bureau*, 553 N.W.2d 496 (N.D.1996), he did not know, nor should he reasonably have known, that his shoulder injury was work related. Ringsaker relies upon the following language from *Klein*, at ¶ 19:

> Certainly, some injuries are obviously caused by the claimant's work and do not require a doctor to inform the claimant his injuries are work related. In these situations, the limitations period begins to run in the absence of any medical advice. Other complex, insidious injuries, however, require knowledge in medical matters because their causes and effects are not immediately apparent to the reasonable lay person, not learned in medicine.

Again, Ringsaker's argument on this issue is premised upon his assertion that his doctors had told him his pain was caused by arthritis. We have concluded that there was sufficient evidence from which WSI could conclude Ringsaker's testimony was not credible.

[¶ 17] This case is clearly distinguishable from *Klein* and *Anderson*. In those cases, the claimants had medical ailments which commonly occurred without a specific triggering injury, arthritis and carpal tunnel syndrome, respectively, and argued that their injuries were gradual progressions without a specific original date of injury. The Court in each case concluded that, without medical advice linking their conditions with their employment, the claimants would not know or have reason to know their injuries were work related. The Court explained in *Klein*, at ¶ 19, that, when the claimant has a "complex, insidious" injury or condition, the causes and effects may not be evident to a layperson and the one-year period in N.D.C.C. § 65–05–01 may not be triggered until the claimant is advised that his injury or condition is work related.

[¶ 18] By contrast, Ringsaker has at all times indicated that his shoulder problems began when he was injured while unloading a truck at work. He told his doctors

when seeking treatment for his shoulder pain in early 1997 that he had injured his shoulder at work in late 1996. He has consistently indicated that he had no pain or problems with his shoulder prior to the 1996 work incident, and has had continual problems since that time. We conclude *Klein* and *Anderson* are distinguishable.

[¶ 19] We recognize that this Court has indicated "[a] person who experiences minor pain or other symptoms while working does not know, or have reason to know, of a significant work-related injury." *Anderson*, 553 N.W.2d at 500; *see also Klein*, 2001 ND 170, ¶ 17, 634 N.W.2d 530. The facts in this case demonstrate Ringsaker's injury involved much more than "minor pain." He saw his doctors on at least five occasions in the months following his injury, including one visit to the emergency room, and was given numerous injections in an attempt to alleviate the pain. He also was prescribed medication for his pain. This medical history, the 1997 medical records, and Ringsaker's contemporaneous acknowledgment that his shoulder problems were caused by the 1996 work incident indicate that this was not "minor pain or symptoms" from which a layperson would be unaware that the injury was work related.

[¶ 20] On the record in this case, a reasoning mind reasonably could conclude that WSI's finding of fact that Ringsaker knew or should have known by early 1997 that he had suffered a work-related injury was proven by the weight of the evidence. Ringsaker did not file a claim for benefits until February 3, 2000, some three years later. Accordingly, we conclude WSI's finding that Ringsaker failed to file a timely claim within one year of his work injury is supported by a preponderance of the evidence.

IV

[¶ 21] The district court judgment affirming WSI's order dismissing Ringsaker's claim for benefits is affirmed.

[¶ 22] DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., WADE L. WEBB, D.J., concur.

[¶ 23] The Honorable WADE L. WEBB, D.J., sitting in place of KAPSNER, J., disqualified.